Louis N. OLMSTEAD v. THE FARMERS' MUTUAL FIRE INSURANCE COMPANY OF IONIA COUNTY.

*Insurance—Forfeitures—Opportunity for hearing.*

Forfeiture of insurance cannot be declared nunc pro tunc after the loss if the policy was in force when the loss took place.

Forfeitures should never be more rigorously enforced than will be fairly

justified by a strict construction of the provisions on which they are based, as against the party insisting upon them.

An insurance company is estopped from claiming that the right of a policy holder is already suspended if it recognizes its continued existence by notifying him that 'it is now liable to immediate suspension unless he gives prompt attention to the notice.'

Notice from the secretary of a mutual insurance company is notice from the company, which is bound by his act.

The opportunity for a hearing, if the circumstances admit, is always presumed to be preliminary to the exercise of judgment where the result is to deprive one party of a right or to give the other an advantage.

The charter of a mutual insurance company provided that if a member did not pay his assessment within thirty days after demand his insurance might be suspended by the secretary or board of directors; but if suspended by the secretary appeal might be made to the board of directors when in session. *Held* that such forfeiture could not properly be imposed as an *ex parte* result of mere default in payment, and without giving the assured an opportunity for hearing.

A judgment may be affirmed where the result is correct, however it was arrived at.

Error to Ionia. (Russell, J.) Jan. 18.—Feb. 27.

Assumpsit. Defendant brings error. Affirmed.

*Morse, Wilson & Trowbridge* for appellant.

*Mitchel, Bell & McGarry* for appellee. No man can be condemned unheard: *Buck v. Sherman* 2 Doug. (Mich.) 181; *Greiner v. Klein* 28 Mich. 17; *Austin v. Register* 41 Mich. 724; *Strachan v. Drain Com'r* 39 Mich. 170; Cooley's Const. Lim. 362, 363, n. 1.

Graves, C. J. This is a writ of error brought to reverse a judgment in favor of the plaintiff on a policy of insurance issued to him by the defendant.

The policy was issued February 9, 1875, for the term of the plaintiff's membership, and the loss occurred on the 17th of September, 1881, and in January, 1882, the suit was instituted. As stated in defendant's brief the defense was as follows: *First*, that a valid assessment was made against

the plaintiff; *second*, that he received due notice of it; *third*, that he failed to make payment within the time prescribed by the notice and the regulations of the charter and by-laws; and *fourth*, that by such failure his insurance, through the operation of the policy and the charter and by-law No. 16, became forfeited, and that at the time of the fire the policy was not in force.

The real position seems to have been that as a consequence of the steps taken to assess the plaintiff and to charge him with the assessment, and of his failure to pay, the policy, under the silent operation of its own terms and of the provisions of the charter and by-law, had ceased at the time of the loss to have any effect by way of insurance.

The assessment proceedings to which reference is made were taken March 15, 1881, but they were not signed by any one as secretary of the company until after the commencement of the suit, and the gentleman who then assumed to sign in that character had gone out of office. The assessment was to take effect June 1st, 1881.

Notice was mailed at the latter date to the plaintiff and it stated that interest at ten per cent. would be charged on all sums not paid within thirty days after receipt of the notice, and that all sums not paid on or before the first day of August following would have to be paid at the office of the company in Ionia, "and that the insurance would be suspended until paid." No reference was made to forfeiture. The plaintiff admitted having received this notice, but he was silent concerning the time and there was no affirmative showing on the subject. Three days before the fire a second notice was mailed and the plaintiff received it the day after it was sent. No evidence was given of any other notice.

On the 22d of October, over a month after the fire, the plaintiff's claim was before the board of directors and they came to the conclusion that the company was not liable and ought to refuse payment, and recorded their opinion and refusal in the form of a resolution in these terms: "Resolved, that in the opinion of this board Mr. L. N. Olmstead,

by means of failure to pay his assessment in the time required by the charter and by-laws of the company, and the provisions of the policy, has forfeited all claims upon the company for damages from losses, and that his policy was suspended by action of the board of directors."

This of course had no retrospective effect on the plaintiff's rights. If at the time of his loss the insurance was yet running it was not liable to be affected by this postliminious action. No forfeiture or suspension could be enacted nunc pro tunc even at a regular hearing. Such as the relation was between the plaintiff and the company on the 17th of September it could not be recalled by the board of directors on the 22d of October and annihilated. The resolution amounted to nothing more than an authoritative refusal to pay the loss, with the reasons for it. Indeed it is not understood that the counsel for the company is inclined to attach greater importance to it.

After the issue of the plaintiff's policy the charter and by-laws were materially altered, and the theory of the defense makes it necessary to admit that these alterations applied to his insurance and controlled his rights.

The plaintiff met the defense with two general answers: *First.* That the acts relied on as creating an assessment fell far short of it and for that reason there was no ground of forfeiture or suspension on any theory. *Second.* But admitting that the assessment was valid and the notice also and that payment had not been made at the time of the fire and had been in default for more than sixty days, and still the insurance was not thereby canceled nor suspended. Each of these positions was fully elaborated and very strongly presented. In the view taken of the case the following points are waived. The aspect in which the controversy is considered and the ground of determination render them immaterial : 1st, whether the material alterations in the charter and by-laws subsequent to the policy were of force to bind the plaintiff's contract rights and duties ; 2d, whether the assessment proceedings were sufficient to found a can-

cellation or suspension of the insurance; 3d, whether there was any proof or evidence of a notice to show the plaintiff in default for sixty or for thirty days anterior to the fire.

The defendant corporation relies on this amended charter of 1881 and on by-law No. 16, adopted in 1876, both posterior to the policy, and making every concession to the defense and assuming that these provisions ought to control, and the question is whether any cancellation or suspension occurred, or was supposed by the company to have occurred, at any time prior to the fire.

The last branch of the inquiry will admit of no other than a negative answer. As late as the occurrence of the fire the company supposed that the plaintiff's insurance was not yet canceled nor suspended. The evidence is full and unanswerable. It is found in an act of the company which stands admitted with nothing to derogate from its effect. Allusion is made to the second notice mailed to the plaintiff as already stated only three days before the fire. It stated that the plaintiff's assessment was still unpaid and asked him to pay it at the office of the company in Ionia or at either of several other places mentioned, and it closed up as follows: "You can send the above amount to me at Ionia, Mich., at the risk of the company, if contained in a registered letter or money order, which your postmaster will furnish you for a few cents, and a receipt will be sent to you by mail. Your insurance is now liable to immediate suspension, therefore your prompt attention should be given this notice if you require remuneration in case of a loss."

Had the insurance been already annulled or suspended in the opinion of the company, how was it possible to suppose it was "now liable to immediate suspension," or, what is clearly implied, that the right to recover for a loss would be subsequently cut off by a suspension unless *prompt attention were given to this notice?*

The position, power and duties of the secretary render this act significant. He must be taken to have possessed full knowledge of the company affairs; and having equally with the board of directors the power to decide originally

for or against cancellation and suspension, and being the organ to communicate the determinations as well as the agent to record them this notice sent out in the course of his agency must be regarded as coming, so to speak, from the mouth of the company itself. It is as though the corporation had been a natural person who had deliberately spoken under the like circumstances in the same way. The result is clear that up to the occurrence of the fire the company did not imagine that the plaintiff's insurance had become forfeited or suspended. And if such was the case, it was an unsuspected consequence forced upon the parties by the charter and by-laws. Was it so ?

Admitting that the plaintiff was in default for more than sixty days, and admitting that the by-law of 1876 and the amended charter of 1881 applied, was a forfeiture or suspension the positive effect of their silent operation ? The by-law is as follows : " When an assessment is made and due notice is given, if the policy-holder shall refuse or neglect to pay the assessment for sixty days, the policy shall be suspended." The .charter empowered the board of directors to make such by-laws not inconsistent with the law of the State and the provisions of the charter as should be necessary for the government of the officers of the company and the conduct of its affairs. § 8. At the same time, instead of leaving the matter of forfeiture and suspension to be governed by by-laws, an express provision was inserted prescribing when and in what way it should be practicable to forfeit or suspend insurance. The provision reads as follows : § 11. " Each member shall pay his, her or their assessment respectively to the secretary or his receiver on demand, and in default thereof, if payment be not made within *thirty* days thereafter, his, her or their insurance may be suspended or canceled by the secretary or board of directors, and collections be made as prescribed by law for the collection of claims on demand arising from contracts expressed or implied : provided, that when the insurance is suspended or canceled by the secretary, an appeal may be made to the board of directors when in session."

It will be seen that the only thing of importance about the by-law is in assuming to allow sixty instead of thirty days for paying an assessment, and whether that deviation from the charter in favor of the assessed member is at all questionable is not now material. The power to forfeit or suspend and the mode of doing it depend upon the charter and not in any manner upon the by-law.

Wherever a forfeiture, whether total or partial, is intended to be authorized on the happening of some state of facts, the provisions for it should never be administered in a form or mode more rigorous than a strict construction against the party seeking or insisting on the forfeiture will fairly justify, and where the question is whether it was the purpose that there should be no forfeiture unless ordered as the result of a hearing; or whether the design was that it should immediately arise from the occurrence of certain facts without any authentic finding of their existence; or again, whether it was the intention that it might be produced by a mere ex parte and arbitrary determination, it is incumbent on the court to incline strongly towards the first construction. The rule is universal, and it rests upon natural equity, that where the real subject is whether one shall lose a right or another gain an advantage, it will always be intended, if the case will in any wise admit of it, that the matter was meant to be settled by an exercise of judgment respecting the facts after opportunity given to the parties to be heard. The principle applies.

It is inferable from the charter that it was not intended that a forfeiture or suspension should come of itself on a neglect of payment, or be brought about without any hearing or any considerate judgment on the existence of the necessary facts or the desirability of the thing itself. The secretary or board of directors may suspend or cancel the insurance. Here an act to accomplish the result is contemplated and discretion is distinctly implied, and whether this act is by the secretary or the board, the substantial form and the course of doing it is to be the same. But an appeal is authorized from the secretary. Why require the act

referred to or allow the appeal, if the forfeiture or suspension was to result exclusively from a default or from an ex parte decision?

The appeal is not restricted to the company. It is allowed to the other party and it would be absurd to say that a result subject to be appealed from by the parties was intended to be an ex parte result, or a result not amenable to judgment or discretion, but one inevitable in its nature. The charter provision supposes a determination capable of being appealed from by the parties, and on an occasion on which claims and objections could be urged and decided. It is needless to go further. There was neither any hearing nor any corporate declaration of forfeiture or suspension, and the defense failed wholly on its own theory.

It is of no importance that the ruling against the company was based on the assessment. The end reached was correct, and the judgment must be affirmed with costs.

Cooley and Marston, JJ. concurred.