## ENOS *et al. v.* ST. PAUL FIRE & MARINE INSURANCE CO.

1. If an insurance company, with knowledge of facts which render a policy voidable by them, deliberately claim and exercise a right which they can claim and exercise only by virtue of such policy, they thereby waive the right to avoid on account of such facts.

2. Where the policy confers upon the company the right to require the assured to submit to an examination under oath, and the company by virtue of such provision requires and make such examination, they cannot afterwards claim a forfeiture of the rights of the assured under the policy on the ground that, up to the time of such examination, the assured had not given notice of loss or furnished proof of the same.

3. Where the answer of the company alleges that they required and caused such examination to be had, and the evidence shows that at such examination a person appeared, claiming to represent the company, and conducted such examination apparently for them, and afterwards, in reply to a letter from the assured to the company in regard to the written statement taken on such examination, the person writes an answer, purporting to be that of the company, written on one of the company's letter heads, on which the person is advertised as the "adjustor" of the company, the jury may properly find that such person was the agent of the company.

4. Evidence of such facts is competent and admissible upon the question of agency.

5. Such evidence being before the jury, it is competent to show that such person undertook that the statement so made on such examination should be accepted as proof of loss, not as originally binding on the company, but as the first step towards showing an estoppel against the company, to be complemented by other necessary steps or elements.

6. If the company, on being informed that such person, so assuming to act as agent, had represented and undertaken that such statement should be accepted as proof of loss, and that the assured was relying upon such understanding, did not notify the assured to the contrary, but encouraged the assured to continue in such belief, they were estopped from afterwards refusing to treat such statement as proof of loss.

7. An objection to the sufficiency of proofs of loss on a specific ground is a waiver of all other grounds.

8. Where one ground of defense against the payment of the loss was that the assured had fraudulently set the fire which caused it, and, upon such examination, the assured claimed to have been called from church to his store on the night of and immediately befor the fire, and upon

entering was seized, knocked down, tied and robbed of a large amount of money, which he had on his person, he answered all questions as to the origin and circumstances of the fire, from whom, when and under what circumstances he received said money, but refused to give the name of the party who sent it,—such refusal, considered in connection with other facts fully noticed in the opinion, did not alone justify the company in holding the rights of the assured forfeited for failure to make proper proof of his loss, particularly in view of the action of the jury, which, under the instruction of the court, must have found that the claim of the assured was not fraudulently and materially untrue.

9.  A witness, one of the plaintiffs' who stated that he had been half owner of the stock destroyed for more than a year; that he had attended the store and did the clerking; that, although he was not very familiar with the value of that kind of property, he knew the cost mark and the selling price; that he generally examined the bills of goods bought and knew what they cost,—is competent to give his opinion as to their value.

10.  It is not error to refuse to allow a witness to state how the talk and appearance of the assured upon any occasion affected others than himself, for he could only infer their effect upon others, and to draw inferences is the province of the jury.

11.  The silence of a party to an action, against whom damaging facts are called out in evidence, is not equivalent to an admission of their truthfulness, but is the ground of an unfavorable presumption against him.

12.  It is not necessarily error to exclude the opinion of a witness that another was feigning, and it is held not to be error under the circumstances of this case.

13.  Cross examination extends by right only to the subjects covered by the direct examination, and where a witness, although a physician, testifies not as an expert, but only to facts equally obvious to others, it is not error to disallow his cross examination as an expert.

14.  The submission of specific questions to the jury is discretionary with the court, and to refuse is not error.

(Syllabus by the Court.  Opinion filed Jan. 10, 1894.)

Appeal from circuit court, Minnehaha county.  Hon. FRANK R. AIKENS, Judge.

Action on a policy of insurance.  There was judgment for plaintiffs, and from an order denying a new trial, defendant appeals.  Affirmed.

The facts are fully stated in the opinion.

*Kueffner & Fountleroy,* and *H. H. Keith,* for appellant.

Counsel for appellant cited in support of the position that the trial court erred in allowing the admission of testimony as to the value of the goods described and as to agency, and as to communications made to the defendant company concerning the fire and soon after the destruction of the property by fire and as to the power of an adjuster to make a waiver the following cases: Finley v. Quirk, 9 Minn. 198; Benninghoff v. Ins. Co., 93 N. Y. 500; Plath v. Ins. Co., 23 Minn. 484; Broadwater v. Ins. Co., 34 Minn. 466; Bowlin v. Ins. Co., 36 Minn. 435; Barre v. Ins. Co., 41 N. W. 373; Hollis v. Ins. Co., 56 Ia. 454; 21 N. W. 774; Weidert v. Ins. Co., 24 Pac. 242; Fitzpatrick v. Ins. Co. 5 N. W. 154.

Provision in an insurance policy that the assured shall submit to an examination under oath as to the facts connected with the fire is a binding and valid one for the protection of the insurer and not onerous to the insured, and a refusal to answer any question or sign such an examination works a forfeiture of the policy. Gross v. Ins. Co., 22 Fed. 74; Ostrander on the law of Insurance, p. 341, Sec. 149; Bonnell v. Ins. Co., 13 Wis. 758; Harris v. Ins. Co., 35 Conn. 310; Muller v. Ins Co., 45 Mo. 84; Eisman v. Ins. Co., 17 Ins. Law J. 843; Boon v. Ins. Co., 33 Minn. 426; Edgerly v. Ins. Co., 5 Ins. Law J. 846; Weidert v. Ins. Co., 19 Ins. Law J. 740.

A provision in a policy providing that the insured should as soon after a loss as possible furnish proofs of loss to the insurer, is considered to mean that there must be no unreasonable delay. Ostrander on Ins., 399; Owen v. Ins. Co., 57 Barb. 521; Wood on Ins., Sec. 436; May on Ins., Sec. 465. The insured are presumed to know what the conditions of their policy are. Wilkins v. Ins. Co., 43 Minn. 179; Van Hue v. Ins. Co., 26 N. W. 120; Hench v. Ins. Co., 15 Atl. 676; McFarlan v. Ins. Co., 46 Minn. 520. The insurance company could keep silent and not speak,

and if the proofs were not furnished in time it would be absolved from liability. Underwood v. Insurance Co., 57 N. Y. 500; Bomstead v. Ins. Co., 12 N. Y. 81. A provision for proofs of loss to be furnished ' as soon after as possible" requires that the proofs shall be furnished with reasonable diligence. The question of reasonable diligence where the facts are undisputed is a question of law for the court. Inman v. Ins. Co., 12 Wend. 452; Trask v. Ins. Co., 29 Penn. 198; Craig v. Parks, 40 N. Y. 181; Bennett v. Ins. Co., 6 Ins. Law J. 189. These are conditions precedent and plaintiff must show that he has complied with them before he can recover. Boon v. Ins. Co., 37 Minn. 426; Edgerly v. Ins. Co., 5 Ins. Law J. 849; Eisman v. Ins. Co., 17 Law J. 843; Blakely v. Ins. Co., 20 Wis. 217; Inman v. Ins. Co., 12 Wend. 452.

As to the power of an agent of the company to waive any conditions of the policy and as to the effect of the provision of the policy that ' No agent has any authority to modify or strike out any condition of this policy until the same is endorsed in writing on the policy" counsel for appellant cited Gould v. Ins. Co., 21 Ins. Law J. 331; Clever v. Ins. Co., 65 Mich. 525; Golden v. Ins. Ins. Co., 46 Minn. 472; Richards v. Ins. Co., 47 N. W. 350; Bosworth v. Ins. Co., 21 Ins. Law J. 184; Hill v. London Assurance Co., 9 N. Y. 65; Hill v. London Assurance Co., 16 Dillon, 120; Kyte v. Com. U. Assurance Co., 144 Mass. 46; Ins. Co. v. Griffin, 18 S. W. Rep. 405; May on Ins., p. 1168; Underwood v. Ins. Co., 57 N. Y. 500; Brink v. Ins. Co., 70 N. Y. 594.

It was error for the court to refuse to admit the evidence of the witness Cornish who had been acquainted with Mr. Enos for a long number of years to the effect that Enos was putting on and feigning all his troubles. An unprofessional witness may testify to facts within his own knowledge and after he has shown means of forming an impression he may be asked the impression made on the mind at the time by the acts and declarations of the man as to his mental soundness. Clapp

v. Fullerton, 34 N. Y. 190; Pelamorges v. Clarke, 9 Ia. 17; Robinson v. Adams, 62 Me. 369; 16 Am. Rep. 473; Cram v. Cram, 33 Vt. 15; DeWitt v. Barley, 17 N. Y. 340.

*Palmer & Rodge*, for respondents.

The witness, Baillett, who had been engaged in the business over a year, had attended the store and had done the clerking and knew the cost price and selling price, and who generally examined the bills of goods bought and knew what they cost, was a competent witness as to the value of the goods destroyed. Shattuck v. Railroad Co., 6 Allen, 115; Railroad v. Bummell, 81 Pa. 414; Railroad v. Winslow, 66 Ill. 219; Ins. Co. v. Horton, 28 Mich. 173.

The plaintiff was justified in assuming from the acts and conduct of the person who assumed to act for the defendant insurance company, together with other facts and circumstances disclosed by the record that he was authorized in dealing with such person as the agent and adjuster of the company. 2 Wood on Fire Ins. p. 860.

It was competent for the court to leave to the jury the question whether the parties understood at the time the statement was made under oath by the plaintiff as to the facts connected with the fire made in accordance with the provision of the policy providing for the examination of the assured as to any such facts that it was to be accepted as proofs of loss. 2 Wood on Fire Ins. 858; Sherman v. Ins. Co., 46 N. Y. 526; Ins. Co. v. Ives, 56 Ill. 402; Ins. Co. v. Cooper, 50 Penn. 331; Beebe v. Ins. Co., 25 Conn. 51; Ins. Co. v. Wilkinson, 13 Wall.; Ins. Co. v. Fahrenkrag, 68 Ill. 463; Ins. Co. v. Maguire, 51 Ill. 354; 2 Wood on Fire Ins., 861. The adjuster of the defendant gave plaintiff to understand that the statement taken by him under this provision of the policy was all the company required as proofs of loss. If this was not satisfactory it was incumbent upon the company to so advise the plaintiffs without any reasonable delay. Weist v. Ins. Co., 23 A. 991; Ins. Co. v. Wallace, 29 Kan. 755; Whitmore v. Ins. Co., 23 A. 1139; Bishop v.

Ins. Co., 130 N. Y. 494; Billings v. Ins. Co., 52 N. W. 399; Ins. Co. v. Norton, 6 Otto L. C. P. Co., Book 24, 689; Webster v. Ins. Co., 36 Wis. 71; Cannon v. Ins. Co., 53 Wis. 593; Oshcosh G. L. Co. v. Ins. Co., 53 Wis. 593; Towle v. Ins. Co., 51 N. W. 589; Young v. Ins. Co., 52 N. W. 454; O'Brien v. Ins. Co., 17 N. W. 726; Lambertson v. Ins. Co., 39 N. W. 76; Miner v. Ins. Co., 27 Wis. 693. It was not only the duty of the company to act promptly if they were to make any objection to the proofs of loss, but when they did object and assigned as a reason that the plaintiff Enos, declined to answer a question, that was a waiver of all other objections which they might have made. Badger v. Ins. Co., 49 Wis. 395; Killips v. Ins. Co., 28 Wis. 472; O'Conner v. Ins. Co., 31 Wis. 160.

Refusal of the plaintiff, Enos, to answer the question asked him by the adjuster "From whom did you receive the $3,800?" did not forfeit his rights under the policy. Iron Co. v. Assurance Co., 46 Wis. 32; Hoffman v. Ins. Co. 32 N. Y. 405; Ins. Co. v. Winn, 43 N. W. 401; Titus v. Ins. Co., 81 N. Y. 410; Ins. Co. v. Weide, 14 Wall. 375; Dogge v. Ins. Co., 49 Wis. 504; 62 Mo. 239; 26 Am. Rep. 379.

KELLAM, J. This is an action to recover upon a fire insurance policy. The complaint, after stating the usual allegations in such an action, and that the fire which caused the loss occurred on the 4th day of November, 1888, further alleges that at such fire the plaintiff Enos received such injuries as incapacitated him for the space of 60 days thereafter to do or understand simple matters of business, "like giving notice of the loss of his said property to the defendant, or making proof of his loss thereon," but that he gave defendant due notice of such loss, and, on or about January 23, 1889, furnished proofs of the same and of his interest, which proofs were accepted by defendant, who waived all further or other notice or proof. A copy of the policy was attached to the complaint as an exhibit, specific provisions and stipulations in which will be noticed as we progress

The answer alleged, as an affirmative defense, that subsequent to the making of the contract of insurance, which in terms covered the property of Enos & Baillett as partners, and insured them against loss, said Baillett sold and transferred his interest, if he had any, to said Enos, contrary to the conditions of the contract, and that at the time of the loss Baillett had no interest in the property alleged to have been destroyed. Further, that the said fire was wilfully and intentionally set and caused by plaintiff Enos for the purpose of recovering the insurance money. Further, that plaintiffs failed and neglected, without reasonable excuse, to furnish proper or sufficient account or proof of said fire and loss, and that they have never furnished said proofs, or any inventory, as provided in said contract; but that certain pretended proofs and account of the fire subsequently furnished were wilfully false, untrue, and fraudulent, the effect of which was, by the terms of the contract or policy, to avoid and make it null. To the answer the plaintiffs replied, but as the answer was neither to a counterclaim nor required by the court it was valuntary and not material. The trial resulted in a verdict and judgment for plaintiffs, and from such judgment, and the order refusing a new trial, defendant has brought this appeal.

Of the 161 assignments of error quite a number are expressly abandoned by appellant, and as many more are passed without argument. Without noticing each individually, we will endeavor to go over the ground covered by those discussed by counsel for appellant. A few questions are raised involving generally the constituent elements of a cause of action like this, such as what a plaintiff is required to prove to show performance on his part or an acceptance by the company of something other, less or different, as performance, and what kind of evidence is competent, for either purpose. There are other questions not so general, but peculiar to this case, springing from the admission or rejection of particular items of testimony.

While the making of the contract of insurance as evidenced

by the policy is not admitted, but is denied by the answer, no question is made but that it was an existing and binding contract at the time of the loss. The fire occurred November 4, 1888. The policy required that the insured "should forthwith give notice of said loss to the company, and as soon thereafter as possible render a particular account of such loss," etc. Appellant claims that these conditions were not complied with, and that consequently plaintiff's rights under the policy were forfeited. We shall pass for the present at least all the matters and grounds actually or presumably within the knowledge of defendant, on account of which it is claimed the contract of insurance was avoided and became nugatory, up to January 23, 1889. The matters thus passed include the omission of Baillett, as well as of Enos, to make proof of loss. We do it upon this ground: The policy provided that, if required by the company, the assured should submit to an examination under oath by any person appointed by the company, presumably, though it is not so expressly stated, as to the circumstances of the fire and other matters affecting the validity of the claim for indemnity. In defendant's answer it is alleged, and the evidence so shows, that on "the 23d day of January, 1889, the said assured, W. B. Enos, in accordance with the terms of said contract of insurance, was duly required by said defendant to submit to an examination under oath, before a person duly appointed by said defendant," etc. Whether what had been done or left undone up to that time was sufficient to annul the contract and destroy plaintiff's rights under it is not now material. Even though such facts would have entitled the company to treat the policy as no longer binding upon them, they were not obliged to so treat it, and they plainly did not. The only right they had to require the assured to submit to an examination rested directly upon the contract, and by the exercise of that right they electd to treat the contract as still in force. They could not claim and exercise a right by virtue of the contract, and at the same time deny the existence of the contract. When, after knowl-

edge of the breach of any of the conditions of the policy, upon which it might have insisted upon a forfeiture, the company recognized its continued validity by requiring the plaintiff to submit to examination under it, it estopped itself from claiming such forfeiture. Titus v. Insurance Co., 81 N. Y. 410; Cannon v. Insurance Co., 53 Wis. 585, 11 N. W. 11; Ganz v. Insurance Co., 43 Wis. 108; Replogle v. Insurance Co., 43 Wis. 108; Replogle v. Insurance Co., 132 Ind. 360, 31 N. E. 947; Insurance Co. v. Kittle, 39 Mich. 51; Billings v. Insurance Co., 34 Neb. 502, 52 N. W. 397; Hollis v. Insurance Co., 65 Iowa, 454, 21 N. W. 774.

We do not mean to be understood as holding that the company, by exercising its right to require Enos to submit to an examination, thereby waived its right to require proper proofs of loss, but we do hold that by so doing it waived its right to hold the contract forfeited on account of any fact or facts known to it when it deliberately exercised such right of examination. We shall assume, then, that on the said 23d day of January, 1889, the policy was in force as against any breach of conditions then known to the defendant company, which would, of course, include failure up to that time to give proper notice and furnish adequate proofs of loss, either by Enos or Baillett. On that day the defendant examined the plaintiff Enos under oath. The examination was reduced to writing and retained by Mr. Perry, assuming to act as defendant's agent. The plaintiff's claim that the defendant at that time, through the adjuster and agent, Perry, accepted this statement as proof of loss, and that the subsequent conduct of the company was such as to reasonbly lead the plaintiff to understand that it was being so treated by them. The defendant contests the first proposition of this claim on the ground that it was not shown that Perry had authority to bind the company by such acceptance, and, further, that the evidence does not show that he undertook to do so. That upon the occasion of, and in the taking of, Enos' statement on the 23d day of January, 1889, Perry was representing

and acting for the defendant company cannot be seriously questioned. The answer alleges that the examination of that date was one required by the company. and was taken before a person appointed by them. There is no claim that there was more than one examination at that time. It was conducted by Mr. Perry, who was evidently in possession of all the pape:s and information necessary to prepare him for such examination. Subsequently Perry wrote Enos, on one of the company's letter heads, containing the names of the general officers of the company and "A. W. Perry, Adjuster;" the subject of the letter being this same statement. This letter is addressed to Enos, and acknowledges the receipt of one from him, which, he writes, "is referred to me for reply." Enos testifies that, "to the best of his recollection," his letter, to which Perry's purports to be a reply, was addressed to the company. If, as against all this evidence, which we think was competent, Perry was not in fact the agent of the company, but was perpetrating a fraud on both the plaintiff and defendant, the company was in a position to show it, and should have done so. We think, further, that the evidence sufficiently shows that Perry represented the company in the capacity of an adjuster; at all events it tends to prove it. Conclusive evidence of his relations to the company, and his exact authority as agent, was peculiarly within the knowledge and under the control of the defendant. It could easily have disproved his assumed authority, if he did not have it. As we said in Gates v. Railway Co., (S. D.) 57 N. W. 200: "It is a maxim of the law that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." There are cases holding, some directly and others in effect, that the adjuster of an insurance company has an apparent authority to waive proofs of loss,—that he has, as to that department of the business, the power of a general agent. In Insurance Co. v. Shryer, 85 Ind. 362, the court says: "There is much diversity of opinion as to whether an adjuster

has authority to waive preliminary proofs. It would seem that the better reason is with the cases which hold that he has; for a company that sends an agent to ascertain the nature, cause, and extent of the loss, and employs him in that particlar line of duty, may well be deemed to have invested him with a general authority in all such matters." In Little v. Insurance Co., 123 Mass. 380, it was said, in speaking of agents authorized to adjust a loss, "as a necessary incident they had power to dispense with those stipulations for the benefit of the company which had reference to the mode of ascertaining the liability and limiting the right of action." In Insurance Co. v. Pickel, (Ind. App.) 29 N. E. 432, the company's adjuster informed the insured soon after the fire that he would not be required to give notice or furnish proof of loss: The court said: "This was sufficient to excuse the giving of the notice sooner, or even at all." See, also, Brink v. Insurance Co., 49 Vt. 442, where it was held that the declarations of the adjusting agent in the course of the discharge of his duty were properly shown in evidence. In other cases, such as Hollis v. Insurance Co., 65 Iowa, 454, 21 N. W. 774, this doctrine of presumed authority as matter of law is not accepted, but it is held that his authority must be proved; the jury then determining whether the acts claimed to constitute a waiver were within such authority.

But, passing as questionable the authority of Perry as adjuster to bind the company by his acceptance of informal or defective proof of loss, he was still the agent of the company, and for it was investigating the circumstances of the fire, presumably for the purpose of enabling the company to determine whether or not it would pay the loss, and if, while so acting, he undertook for the company, or deliberately caused the plaintiff Enos to understand, that the statement made on such examination would be considered and treated as proof of loss, and the company, with knowledge of the fact and that Enos was relying on it, did not promptly repudiate the undertaking as unauthorized, and thus disabuse Enos, they could not after-

wards take advantage of his omission to furnish other proofs, so long as such omission was occasioned by the representations of the agent Perry, and the nonrepudiation by the company. While Perry as the adjusting agent of the company might not have been authorized to accept the statement in place of the proof contemplated by the policy, the company itself might do so, or it might by its conduct estop itself from claiming that it had not done so. With these propositions in mind we will examine the evidence upon this question of fact, both as to its competency and sufficiency.

There is evidence tending to show that when Perry called upon Enos, January 23, 1889, for the purpose of concluding the examination under oath, he having previously been there and commenced it, Enos was unwilling to sign the statement until he had time to examine it; that Mr. Perry objected, saying that "he had been there two or three times to take the proof of loss, and that if he didn't sign the paper that day, he should not accept it as that," and that Enos then signed it. This evidence, although excepted to by defendant, was competent. Perry was there acting, not automatically, but as the intelligent and trusted agent of the company. What he said might not have been binding on the company because he said it, but it might have become binding on them because they did not unsay it when fair dealing required them to do so. All the evidence upon the question of whether Enos might and did reasonably understand, from what Perry said, that the statement should take the place of other proof of loss, was left to the jury. If found in the affirmative, the first necessary element of estoppel against the company would be established—valueless, of course as an estoppel, unless complemented with the other necessary constituents. Perry as the agent of the company then took the statement away with him, leaving Enos, as the verdict of the jury necessarily implies, under the belief that the statement was to be accepted as proof of loss. In the July following, Enos hearing nothing further, wrote a letter, directing it, as he testifies

according to his best recollection and belief, to the St. Paul Fire & Marine Insurance Company, saying that he understood from their adjuster that the statement made to him on the occasion of his examination was all that was required, but asking, if additional proofs were wanted, that blanks be sent him. To this letter he testified he received the following reply: "C. B. Gilbert, secretary. W. S. Timberlake, treasurer. C. H. Bigelow, president. St. Paul Fire & Marine Insurance Company. Cash capital $500,000. Cash assets, $1,684,654.70. A. W. Perry, adjuster. St. Paul, Minn., July 24th. 1889. Mr. W. B. Enos, Garry, D. T.—Dear Sir: Your favor of the 22nd inst is referred to me for reply. The courts differ as to the effect of such a statement as you made being proper proofs of loss. The company does not think it complete until the questions you declined to answer are answerred fully. No blanks are furnished assured to make proofs. Do you think it wise to press your claim further? Yours truly, A. W. Perry, Adjuster." To the introduction of this letter defendant objected, because it was not shown that Perry had authority to write it, and that consequently it did not bind the company. The objection is not good. It was a reply to a letter written to the company. It purported to come from their general office. It was written by one advertised on their letter heads as the general adjuster of the company. He says the letter from Enos was referred to him for reply. If it had been written to him personally, or even officially, it would not have been referred to him. It evidently was written to the company. Any man receiving such a letter under such circumstances, signed by the regular and advertised adjuster of the company, would understand and accept and act upon it as authoritative, and Enos was justified in doing so. In his letter to the company Enos reminded them of his understanding, received from Perry, that the statement would be received as proof of loss. The answer, though written by Perry, from whom Enos claimed to have gotten such understanding, does not disclaim his responsibility for Enos' so believing, but says:

"The company does not think it complete until the questions you declined to answer are answered fully." The statement on examination was made January 23, 1889. Whatever representations Perry made as to the acceptance of the statement in place of other proofs were made after the statement was completed, except the signing by Enos. He knew then, as well as in July following, that Enos had declined to answer certain questions, the same questions to which he refers in his July letter. The refusal to answer could not be subsequently used to qualify the effect of his representations to Enos, for the representations were made after, and with fresh knowledge of the refusal. Suppose Perry had then and there given Enos a writing saying that the statement so made and signed would be accepted and treated by the company as proof of loss; the case would be no stronger for the plaintiff than the verdict of the jury has left it. They have found in their verdict that such representation was made. Its effect to bind the company in either case, whether verbal or in writing, would depend—first, upon his authority; or, second, if unauthorized, upon whether the company by its subsequent affirmative or negative acts was estopped from avoiding the effect of the representations, and this will be further considered presently. The letter itself is entirely consistent with Enos' theory that when the statement was signed by him it was mutually understood that it should take the place of other proof; that Perry knew that it was so understood, and that the statement was to be so treated. This was an important fact, affecting the rights and interests of both the plaintiffs and the company. It was intimately related to the very business the agent was conducting. It was of such a nature that it was the duty of the agent to communicate to his principal, and in such case it will be presumed that he did so. Mechem Ag. § 723; Distilled Spirits, 11 Wall. 367.

If he did so inform the company, or if in law it will be presumed that he did, then the company from soon after the 23rd day of January retained the statement without objection, know-

ing that it was understood by Enos to be proof of his loss, and that, too, notwithstanding the fact that he had refused to answer certain questions propounded to him by the agent. If the company was chargeable with this knowledge, and for six months and until July 24th retained the statement as proof of loss without objection on any ground, had they then not waived every objection or defect which, if objected to, Enos might have remedied? Section 4178, Comp. Laws, says: "All defects in * * * preliminary proof * * * which the insured might remedy, and which the insurer omits to specify to him without unnecessary delay, as grounds of objection, are waived." But it may be that the knowledge of Perry, the adjuster, ought not to be imputed to the company. If so, then the company had done nothing or failed to do anything since the 23rd of January waiving its rights to proofs as contemplated by the policy, or excusing plaintiff from making such proofs. Upon the receipt of Enos' letter of July 22nd, they were, if never before, fully advised that Enos, pursuant to an understanding claimed by him to have been had with the adjuster, Perry, had been and was relying upon the statement made upon the examination being treated as proof of loss. No objection was made, either as to the arrangement itself, or Perry's authority to make it, or that the statement of proof was too late. The only objection made was that the statement contained unanswered questions. Read in connection with the circumstances in evidence, the plain inference from the letter was that the company declined to accept the statement as satisfactory proofs of loss, because it did not contain information which they regarded as material. In other words, the objection was not to the form of the proof, but that it was defective in a particular respect. Thus putting the objection on the specific ground was a waiver of all others. This is a rule of our code (Section 4178), and is the doctrine of the courts generally, (2 Wood Ins. § 452; May, Ins. §468).

It becomes important, then, to notice the questions which

Enos declined to answer, with a view of determining whether the matter sought to be elicited was such as the withholding of which would alone entitle the company to hold the proof so materially defective that plaintiff's rights under the policy would be forfeited. The property insured was a stock of hardware and store furniture and fixtures. There was no question but that the loss exceeded the insurance. One ground of defense was that the fire was fraudulently set by plaintiff Enos. There was no question but that the company had the right by the terms of the policy to require the plaintiffs to submit to an examination. Under the circumstances of this case, the company was entitled to use great freedom in searching the plaintiffs, the premises destroyed, and all the circumstances and incidents of the fire which would throw light upon its cause and the extent of the loss, and we are not surprised that their agent Perry, should have asked the very questions he did ask. The plaintiff claimed that on Sunday evening, when the fire occurred, he was called from the church where he was attending service to the store for the purpose, as he says it was presented to him, of waiting on a customer; that upon opening the store door a blanket was thrown over his head, he was seized, stricken down, and tied with ropes by two men unknown to him, and robbed of a large sum of money which he then had on his person. These alleged facts come from the statements of Enos under his examination concluded on the 23d day of January. 1889, which have already frequently been referred to. Enos was not examined as a witness on the trial as to these facts. Upon this examination, as appears from the statements, Enos says he received this money from one C. W. Cunningham on the train the day before the fire; that he went to the train and met Cunningham, who handed him the money; that it consisted of seven $500 bill and three $100 bills; that, on the evening of the fire they were in an envelope in a red leather bill book in his inside vest pocket; that he had previously met Cunningham three times in Minneapolis; that he was in the employ of the

person who sent the money, which Enos had previous deposited with him for investment; that he had been making such deposits with this same person at different times since 1880; that the depositary resided in Chicago; and that he met Cunningham at the train in pursuance of a letter from the depositary, received three days previously. These facts appear in that part of his examination which was taken a short time prior to January 23d, but resumed and concluded on that day. At the conclusion of the examination of the 23d occur these questions and answers: "Q. From whom did you receive the $3,800.00 you say was taken from you on the night of the fire? A. I decline to answer the question. I can't answer the question until I get permission. Q. Where does the party you received the money from reside; his street and number? A. I can't answer. I don't know. I do not know his street and number. Q. What is his postoffice address? A. Chicago. Q. Have you not informed the adjusters, and also other parties, that he resided in Duluth? A. No, I think not. Not that I remember of now. Deponent further states that he bought drafts from parties on New York and Chicago, and remitted them to this third party for investment." These are the refusals to answer upon which the defendant company bases its right to hold the policy forfeited. The money so claimed to have been taken and lost was not property covered by the insurance, and the only interest the defendant company could have in Enos' answer, as to the name of the party from whom it came, was the advantage it would give them in following it up by further investigation, with a view of satisfying themselves whether he was telling the truth or not. He stated that the party lived in Chicago; that he did not know his street or number; but he did state that the money was sent by him at different times to this third party by drafts which he himself bought on New York and Chicago. No effort was made to probe the matter further, and yet here was a clue, as it would seem to us, worth more than the name of the Chicago party, without street or number. He was not

asked where or when he bought the drafts by which this money was claimed to have been remitted, and we cannot presume that he would have declined to disclose this information if asked. To hold with appellant on this point, we must be prepared to say that there could have been no facts or circumstances which would have excused Enos from disclosing the name of the party from whom he received this money. Conceding that the subject of the inquiry was one concerning which he was bound to answer to a reasonable length, the case would have been much stronger if the company, through its agent, had made any attempt to use the information which he did give, and had been frustrated with evasive answers or refusal to answer. In respect to this point the company bases its right to have the policy held forfeited upon the refusal to answer this one question. We think the ground is not sufficient. Forfeitures should always rest upon very substantial grounds. They are not favored either by our code or at common law. Section 3435, Comp. Laws; May, Ins., § 367; Appleton Ins. Co. v. British Amer. Assur. Co. 46 Wis. 32, 1 N. W. 9, and 50 N. W. 1100; Ins. Co. v. Norton, 96 U. S. 242; Olmstead v. Ins. Co., 50 Mich. 200, 15 N. W. 82.

The question of fact, whether there had been any transfer by Baillett of his interest in the insured property to Enos, was submitted to the jury on the evidence, with an instruction that states the law as appellant claims it to be, and their verdict is accepted as conclusive.

We have thus endeavored to consider and discuss the general questions which go to the company's liability on the contract, as affected and controlled by the facts which the evidence tended to prove, and which from the verdict, the jury must have found were proved. What we have already said upon these general questions will indicate our judgment upon many of the specific errors assigned, including the most of those predicated upon the instructions to the jury, and render particularization unnecessary. Of the remaining assignments based

upon the admission or exclusion of evidence, we shall expressly notice only those which seem to be seriously pressed in argument, though we have endeavored to consider each one in our examination of the case.

On the trial it was sought to prove the value of the property destroyed by J. H. Baillett, one of the plaintiffs. It is insisted by appellant that he did not show himself qualified to give an opinion as to its value. Up to the point where the question of his qualification was raised, he had testified that he had been for over a year a partner with Enos and half owner of the stock; that he attended the store and did the clerking; that he was not very familiar with the values of that class of property at that time, except as he knew by the marks; that he knew the cost mark and the selling price; and that he generally examined the bills of goods bought, and knew what they cost. While this evidence may not show a very high degree of qualification, it was not error to allow the witness to state his opinion as to their value. It is not required that an expert witness stand at the head of his class to make his evidence admissible. His preliminary examination must show such knowledge of the subject as will enable him to speak with intelligence. The jury will determine the value of his opinion from the knowledge which he shows himself to possess. 1 Rice, Ev. 334; Bedell v. Railroad Co. 44 N. Y. 367; Insurance Co. v. Horton, 28 Mich. 173.

Referring to the conduct and appearance of Enos shortly before the fire, Mr. Bland, into whose shop Enos went after he came from the church, was asked, after having testified to Enos' actions and appearance, "whether or not his talk and manner was such as to attract your attention and cause you all to comment upon it after he went out." The exclusion of this question was not error. The witness had already stated how he deported himself on the occasion, and that his manner was unusual. The witness could not know as a fact how it affected

others, nor that it caused them to make comments. He could only infer the cause of the comments, if any were made, from what he saw and heard. Having fully stated the facts, the inferences were for the jury.

Referring to the fact, as it appeared in evidence, that, when Enos was discovered in the burning store, he was apparently tied with ropes, the same witness, Bland, was asked, "Suppose Mr. Enos had been physically able, was there anything in the way those ropes were tied and fixed to prevent him from getting up and walking off, if he wanted to?" The witness could not answer this question unless he knew how the ropes were tied, and if he knew he could tell the jury, and then they would exercise their own judgment as to the effect of such tying. The rule is general that facts come from the witnesses and the inferences from the jury.

Error is also charged by different assignments upon the refusal of the court to allow defendant to show by Mr. Manicum, one of its witnesses, that upon a former trial of this case he had given the same testimony as he had already given upon this as to a conversation with Enos; that Enos was present and heard it, and did not go upon the witness stand and contradict it. We do not understand the rule of law quite as appellant states it, that "whenever a person is charged with any fact which will militate against his case, and he does not deny it, his silence is an admission." Silence under such circumstances undoubtedly does and should raise a presumption against him. We think the effect of such silence is usually characterized as an unfavorable presumption, and not necessarily as an admission of the truthfulness of the charge. See Smith v. Tosini, (S. D.) 48 N. W. 299; Baldwin v. Whitcomb, 71 Mo. 651; Probert v. McDonald, (S. D.) 51 N. W. 212. The witness had testified to what was said by him to Enos in the conversation, and, if Enos did not deny it, defendant was entitled to whatever unfavorable effect would spring from his silence; but defendant was not entitled to show by the witness what he had testified

to, and what Enos had not testified to, on a former trial. Besides, if Manicum had sworn that on the previous trial he testified to the same facts as upon this trial, it would not have strengthened his evidence; and if it he had testified that Enos, being present, did not contradict him, it would have added nothing to Enos' silence, which was fully patent to the jury. It would simply inform the jury that what was then occurring had also occurred on the former trial. The evidence, if admitted, would not have changed Enos' attitude towards Manicum's testimony, or its truthfulness, or in any manner increase the unfavorable presumption arising from his failure to contradict it. We think the excluded evidence was both incompetent and immaterial.

J. B. Cornish was a witness for defendant. He testified that on the night of the fire he first saw Enos at the church. After the fire he saw him at the parsonage. "Q. Did you speak to him? A. I don't think I did that night. Q. Did you go into the room that he was in? A. I did. Q. How close did you go to him? A. Right up, so my clothes touched the lounge he was lying on. Q. Now state to the jury whether you saw anything unnatural about him. A. Nothing, only about the smoke, and starting up once in a while, making a fuss about the smoke, and groaning and rolling around and grabbing hold of things. Q. Did he say anything? A. 'Smoke! Smoke!' Q. Did you notice any bruise on him? A. I did not. No, sir. Q. Any scratches or anything? A. Nothing of the kind. Q. Now I will ask you whether or not you formed an opinion at that time as to whether he was feigning or not." An objection to this question was sustained, and the ruling is assigned as error. In his argument appellant claims that "this witness, being acquainted with Enos and having known him for a long number of years, had a right to give his opinion to the jury" upon the question asked. Without stopping to discuss what the law might be upon the facts thus assumed by appellant, it is significant that the very ground upon which the evidence is claimed to be ad-

missible is lacking. It does not appear that the witness ever saw Enos before that night. As a question of law this question must be determined upon the facts in the record. If, without any previous knowledge of the manner or temperament or deportment of Enos, his conduct on that occasion was so marked and peculiar as to impress the witness that he was feigning, he could have told the jury something of what he said or did to create or justify such opinion. Opinion evidence, particularly from nonexperts, is admitted only from necessity, and where the facts and conditions upon which the opinion is based cannot be adequately described to the jury. It is not possible to lay down a rule so exact in terms as to plainly control all cases. Recognizing this difficulty, courts are inclined to determine each question as it arises by the application of general principles to the particular inquiry. It is true that witnesses have often been allowed to express an opinion as to whether a person was "drunk" or not, but this is upon the ground that drunkenness is unfortunately so common that every person is supposed to be familiar with its symptoms. A witness who confessedly had never seen a drunken man ought not to be allowed to express such an opinion. We are not prepared to say that in this case a foundation could not have been laid that would have entitled this witness to express his opinion as to whether Enos was feigning or not; but without having shown any previous acquaintance with him,—there being, as the witness says, nothing "unnatural about him," unless what he undertook without hesitation to describe to the jury was such,—we do not think there was error in refusing to receive his opinion.

Dr. Hyde was examined as a witness for the plaintiff in rebuttal of the defense made by the defendant. Upon his cross-examination he was asked: "Did Mr. Enos, in your opinion, have concussion of the brain that night?" The question was objected to as incompetent, irrelevant and immaterial, and not proper cross examination; plaintiffs' counsel remarking, "I have not gone into the expert branch of this case." The ob-

jection was sustained, and the defendant excepted. It was ev-
idently the understanding of the court, as indicated by
plaintiffs' counsel, that this witness was not introduced or used
as a medical expert, but that he testified to what he saw and
did the night of the fire as to facts within his knowledge. At
the opening of his examination he was interrogated as follows:
"Q. State to the jury, Dr. Hyde, or describe to the jury Mr.
Enos' appearance when you first saw him at the depot." It
may be stated here, parenthetically, that on the night of the
fire Enos was taken from the burning building to the depot.
The witness' answer was: "After I arrived at the depot Mr.
Enos was apparently in an unconscious condition. Now you
wish me to give the medical part? Q. Now, sir, I want you
to describe the condition just as you saw him; I mean without
the medical part." The witness then testified at considerable
length as to what Enos·said and did, and how he appeared, and
what was done by witness and others. He was not asked, nor
did he state, his opinion as to the probable cause of any symp-
tom or appearance to which he testified, nor did he give any
theory as to the nature, extent or effect of the bruises and
scratches which he said he found on his person. He gave no
diagnostic description of his condition. He stated such facts
only as to his appearance and physical condition as might have
been observed and testified to by a non-professional witness.
Under such conditions the defendant was not entitled of right
to ask the witness, on cross-examination, whether in his opin-
ion Enos had concussion of the brain that night, and the court
committed no error in disallowing it. Upon the same theory
we overrule other assignments of the same nature, based upon
the exclusion of other similar questions to the same witness.

It is further assigned as error that the court declined to
direct the jury to return answers to two specific questions sug-
gested by the defendant. In Refining Co. v. Miller, (S. D.) 47
N. W. 962, we held that the submission of specific questions to
the jury was, under Section 5061, Comp. Laws, discretionary

with the court.    There was no error, therefore, in such refusal. What we have said upon the different features of this case covers also appellant's objections to the instructions of the court so far as they seem to us important.

While there are a number of close questions in this case, we discover nothing in the record which requires a reversal. The judgment of the trial court is affirmed.  All the judges concur.