PETERS *v.* FARMER'S MUTUAL FIRE INS. CO. OF WAYNE AND MONROE COUNTIES.

1. INSURANCE—MUTUAL FIRE POLICY — SUSPENSION — NONPAYMENT OF ASSESSMENT.

> Mutual fire insurance company's policy *held,* suspended for nonpayment of assessment notwithstanding that charter of company provided for optional cancellation of policy by secretary subject to review of board of directors, since suspension for a

confessed nonpayment calls for no review and is an accomplished fact where notice of assessment provided for such suspension in case of default, hence member may not recover for fire loss occurring after default.

2. SAME—CONSTRUCTION OF POLICY.
    If there be language in an insurance policy calling for construction, it should be construed in favor of insured.

3. SAME—NONPAYMENT OF ASSESSMENT—SELF-OPERATIVE FORFEITURE.
    Clause in mutual fire insurance policy providing that assessment shall be paid within a stated time or policy will be forfeited is valid and self-operative.

POTTER, C. J., and NORTH and FEAD, JJ., dissenting.

Appeal from Wayne; Webster (Arthur), J. Submitted October 10, 1935. (Docket No. 46, Calendar No. 38,574.) Decided December 10, 1935. Rehearing denied January 31, 1936.

Assumpsit by Paul F. Peters against Farmer's Mutual Fire Insurance Company of Wayne and Monroe Counties, for sums due for fire loss. Verdict for plaintiff on special questions. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Harry Hartman* (*Harold M. Shapero,* of counsel), for plaintiff.

*Golden, Nadeau & Fallon* (*Frank C. Golden,* of counsel), for defendant.

WIEST, J. I cannot concur in the opinion of Mr. Justice NORTH.

Plaintiff agreed to pay all regular fees and all assessments made against him according to the char-

ter and by-laws, within 30 days after notice.  He was
duly notified of a proper assessment and warned that
"If not paid on or before Jan. 10, 1932, your policy
will stand suspended until such assessment is paid."
He did not pay and later, while still in default, he
suffered loss by fire.

Was the policy so suspended in the absence of sub-
sequent notice of cancellation?

The charter provides:

"He (the secretary) may cancel any and all poli-
cies at any time for non-fulfillment of the require-
ments of the charter of this company on the part of
the holder or holders thereof, subject to an appeal
from such decision to the board of directors at their
annual meeting."

The charter contains requirements other than pay-
ment of assessments, the non-fulfillment of which
call for cancellation of the policy and, to check ar-
bitrary action by the secretary, his cancellation is
made subject to review, but suspension of the policy,
for confessed nonpayment of an unquestioned as-
sessment, calls for no review, is an accomplished fact
and valid without further idle ceremony.  The notice
and default worked suspension of the risk, and I can-
not hold otherwise.

In *School District No. 7, Keeler Twp.,* v. *Farmers
Mutual Fire Ins. Co. of Dowagiac,* 256 Mich. 515, the
by-law of the company provided:

" 'Each member shall understand and take notice
that his assessment is due the 1st day of November
in each and every year, and unless such assessment
is paid on or before December 31st thereafter that
such failure bars him from any privileges in this
company after January 1st following, no matter
whether or not he has received notice of his assess-
ment.' "

There no notice, except that of October 31st or November 1st, was claimed. We said:

"There is no provision for suspension. Does the contract provide for lapse or forfeiture for failure to pay assessment? Having due regard for the rule that if there be language in the policy calling for construction it should be construed in favor of insured, we think the question well answered by the trial judge, quoting from his opinion:

" 'A clause stating that an assessment shall be paid within a stipulated time or policy will be forfeited is valid and such a provision operates of itself to work a forfeiture. * * *

" 'So the question gets around to this: Is the condition of the by-laws, "unless such assessment is paid on or before December 31st thereafter, such failure bars him from any privileges in this company after January 1st following," to be construed as a provision for forfeiture? * * *

" 'As a member of defendant company, plaintiff had the right to recover for the loss if the assessment was paid on or before December 31, 1929. Plaintiff failed to pay; such failure worked a forfeiture of the policy and barred the plaintiff from the right or privilege to collect.' "

The judgment is affirmed, with costs to defendant.

BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with WIEST, J.

NORTH, J. (*dissenting*). Plaintiff, since December, 1903, had carried fire insurance in the defendant mutual fire insurance company. Annually during that period he had received notice of his assessment and of the charter requirement as to payment thereof. So far as appears from the record this notice of assessment and of the policy being suspended in event of nonpayment was in substantially the same form as the notice involved in the instant case, which (with the blank portions properly filled in) was mailed to plaintiff December 8 or 9, 1931, and re-

ceived by him in due course. The blank form of notice is Exhibit A, printed in the margin hereof.* The charter and by-laws of the company are made a part of the insurance contract. We quote the following charter provisions:

"SECTION 11. * * * He (the secretary) may cancel any and all policies at any time for the non-fulfillment of the requirements of the charter of this company on the part of the holder or holders thereof, subject to an appeal from such decision to the board

---

\* EXHIBIT "A"

FARMERS' MUTUAL FIRE INSURANCE COMPANY
OF MONROE AND WAYNE COUNTIES

C. L. Miller, president                La Salle, Monroe county
E. S. Eves, vice-president             Romulus, Wayne county
P. B. Pierce, secretary                Redford, Wayne county
P. Papenhagen, treasurer               Whiteford, Monroe county

---

Notice of assessment 68 and annual statement for the year ending September 30, 1931.

Township ......................................................
Name of Member...............................................
Address.......................................................
The amount of your insurance is..........................Dollars
The amount of your assessment is.....................∴.Dollars
which pay to........................................Collector
within 30 days from receipt of this notice. See section 26 of the charter. If not paid on or before Jan. 10, 1932, your policy will stand suspended until such assessment is paid.

---

To the members of the company:
  I respectfully submit the following statement of the condition of the company and also give you notice of assessment 68 which is now in the hands of the collector in your township.
  The same is four mills, or $4 on the $1,000 insured as ordered by the board of directors at the annual meeting held in Monroe, Michigan, October 6 and 7, 1931.
  See Sections 25, 26, 27 and 28 of charter.

PRESTON B. PIERCE, Secretary.

of directors at their annual meeting, but such cancellation shall not be construed to exempt such holder or holders from payment of their proportion of the just dues of the company at the time of cancellation.
\* \* \*

"SECTION 26. Each member shall pay his assessments within 30 days after receiving such statements from the treasurer or his receiver, and in default thereof his policy may be cancelled and collection be made according to law."

By reason of plaintiff's having received notice thereof, his assessment was due and payable on or before January 10, 1932. He failed to pay the assessment. On February 29th, the insured property was destroyed by fire, resulting in a loss to plaintiff covered by the insurance in the claimed amount of $1,431.16. On March 3, 1932, plaintiff sent to defendant a check for the amount of the assessment of which he had had notice. This check was promptly returned and payment refused on the ground that plaintiff's policy was suspended by reason of his failure to pay the assessment on or before January 10, 1932. Plaintiff brought suit on the policy. The case was tried before a jury and two special questions submitted for determination by the jury. The determination of these special questions by the jury is not being reviewed in this appeal. After rendition of special verdict of the jury, the trial judge granted defendant's motion made at the close of proofs for judgment in its favor. In this connection the trial judge stated:

"The basis of this claim (plaintiff's right to recover) is that his policy was never cancelled. The charter provides for the secretary sending notice of assessment. It provides that the member shall pay within 30 days, and in default thereof his policy may be cancelled. \* \* \* In form this notice is a self-

executing suspension, for, automatically, upon the failure to pay on the date specified, the member stands suspended. Nothing further need be done.''

It is appellant's contention that the notice received by plaintiff and above referred to by the circuit judge did not result in a suspension or cancellation of plaintiff's insurance. Appellee's contention is to the contrary. This presents the controlling issue for consideration on this appeal.

Without question the provisions in insurance contracts of mutual insurance companies or of fraternal societies pertaining to the forfeiture or cancellation of the right to insurance or benefits may be and often are couched in such terms as to render them self-executing. 45 C. J. p. 116. But it is also true that if there is any ambiguity in a contract of insurance, which contract was prepared by the insurer, as in this case, the ambiguous portion should be strictly construed against the insurer. *School Dist. No. 7, Keeler Twp.,* v. *Farmers Mutual Fire Ins. Co. of Dowagiac,* 256 Mich. 515; *Griffin* v. *General Casualty & Surety Co.,* 231 Mich. 642; *Lilja* v. *Standard Accident Ins. Co.,* 171 Mich. 378. It is the claim of appellant that under the terms of the policy in the instant case the mere nonpayment of an assessment neither cancelled the policy or suspended the insurance, since the insured did not receive notice from the company of such cancellation or suspension after the default. And in any event if this phase of the policy (as plaintiff asserts) is ambiguous, the construction of the contract should be such as to not summarily deprive the insured of his protection. Appellant quotes and relies upon the following authorities:

''Where the policy or by-laws expressly or impliedly require some affirmative action on the part of the insurer before a forfeiture can be declared, mere

nonpayment on the day named, without more, does not work a forfeiture.'' 14 R. C. L. p. 976.

See, also, *Petherick* v. *General Assembly of Order of the Amaranth,* 114 Mich. 420; *Olmstead* v. *Farmers' Mut. Fire Ins. Co. of Ionia County,* 50 Mich. 200.

"There is * * * a well-defined distinction between provisions of the character of those considered under preceding sections (where the policy contains a self-executing provision) and other cases where the fundamental law of the order or society provides that for nonpayment of dues * * * the member *may* be suspended by the lodge or other judicatory; in the latter class of cases the designated authority must exercise the power to suspend, otherwise there can be no suspension, for the rules of the order must be looked to as the source of authority. * * * In such cases there must be an actual expulsion or suspension, for the fact of nonpayment does not of itself terminate the member's rights.'' 3 Joyce, The Law of Insurance (2d Ed.), p. 2392.

It is important to note that the insurance contract (charter, § 11) in the instant case does not provide that in the event of "non-fulfillment of the requirements of the charter'' by the insured, the secretary *shall* "cancel any and all policies'' held by such insured; but instead the provision is that the secretary *"may"* cancel such policies. And again it is important to note that section 26 of the charter, upon which defendant largely relies, provides as to the insured: "in default thereof (payment of assessment within 30 days) his policy *may* be canceled.'' The provision is not that failure to pay the assessment timely *shall ipso facto* result in cancellation or suspension of the insurance contract. Because of the provisions contained in this contract of insurance it

must be held that nonpayment of an assessment does not automatically cancel or suspend the contract.

The appellee claims that the notice given was a notice that in the event of failure to pay the assessment on or before January 10, 1932, the policy would automatically be suspended. This gives rise to the question as to whether, in the absence of express provision therefor in the insurance contract, the insurer could give the insured a valid notice of a contingent suspension or forfeiture before the insured has actually defaulted in paying his assessment. We find nothing in this insurance contract justifying notice of contingent suspension or forfeiture in advance of default by the insured. Since the provision in the insurance contract does not, in the event of nonpayment of an assessment, automatically result in cancellation or suspension of the insurance it must be held that the contract, when fairly and reasonably construed, requires action by the insurer and the giving of notice by the insurer to the insured after the latter is in default. Plaintiff was not in default until 30 days after the claimed notice of cancellation or suspension was given. We are not here concerned with a policy by the terms of which nonpayment of an assessment automatically works cancellation or suspension. Instead, under this policy, nonpayment *may* or it may not so affect the contract. The outcome depends on action or inaction of the insurer. The status of the insured should not be changed without his having notice to that effect. Section 11 of defendant's charter clearly contemplates some action prior to cancellation or suspension, because it provides for ''an appeal *from such decision* (of the secretary) to the board of directors.'' Not only is there no proof in this record of notice to the insured of cancellation or suspension after he was in default

in the payment of his assessment, but there is also a total lack of testimony that the insurer, because of plaintiff's default in paying his assessment, took any action by which cancellation or suspension was effected or of any "decision" to that effect prior to the fire loss. Under such a record plaintiff's policy must be held to have been in force when the loss occurred and defendant is liable. Such was our holding in passing upon a very similar mutual fire insurance policy in *Olmstead* v. *Farmers' Mutual Fire Ins. Co. of Ionia County, supra.* We quote a paragraph of the syllabus:

"The charter of a mutual insurance company provided that if a member did not pay his assessment within 30 days after demand his insurance might be suspended by the secretary or board of directors; but if suspended by the secretary appeal might be made to the board of directors when in session. *Held,* that such forfeiture could not properly be imposed as an *ex parte* result of mere default in payment, and without giving the assured an opportunity for hearing." *Olmstead* v. *Farmers' Mutual Fire Ins. Co. of Ionia County, supra.*

Decision in the *Olmstead Case* is not rendered inapplicable to the instant case, as claimed by appellee, by the fact that plaintiff herein sought to have the time within which he might pay extended by the treasurer of defendant company and such extension was not granted.

While a jury was used in the trial of this case for the purpose of rendering decision on two special questions, determination of other issues was evidently left for decision of the trial court without the aid of a jury. Neither party litigant objected to this course of procedure. It follows that, as to the amount to be recovered, determination was for the

court. But because the trial court was of the opinion that there was no liability under the policy, the question of the amount of recovery was not reached at the hearing. The judgment entered in favor of the defendant should be vacated and the case remanded to the trial court for the purpose of determining the amount of plaintiff's recovery and the entry of judgment accordingly. Plaintiff should have costs of both courts.

Potter, C. J., and Fead, J., concurred with North, J.
The late Justice Nelson Sharpe took no part in this decision.