BRIGGS *v.* NATIONAL LIFE INS. CO.

*(Circuit Court, D. Massachusetts. April 14, 1882.)*

LIFE INSURANCE—ENDOWMENT POLICY.

 A person holding an endowment policy, upon which he must pay annual premiums, is entitled to notice of change of agency of the insurance company before it can insist on payment of the annual premium on the very day it becomes due.

In Equity. On demurrer to bill.

*Thomas Weston, Jr.,* for complainant.

*R. D. Smith,* for defendant.

LOWELL, C. J. The plaintiff's bill shows that he procured an endowment policy for $2,000, payable in 15 years from April 21, 1877, one of the conditions of which was that he should pay annual premiums of $113.60 on the twenty-first of April in each year; that he paid the premiums for 1877, 1878, and 1879; that the company has its domicile at Washington, but had a general agent and office

in Massachusetts; that the three premiums were paid to the agent and were countersigned as coming from the Massachusetts office; that some time in April, 1880, before the fourth premium came due, the plaintiff was informed and believed that the company had ceased to do business in Massachusetts, and had given up its office; that he made many inquiries as to where and to whom he was to pay the premium, but was unable to learn; that on or about April 18, 1880, he was informed that the premium was to be paid to a certain bank in Taunton; that he immediately called on the company's former agent to inquire whether it was safe to pay to the bank, and was informed by said agent that the company had taken the collections out of the hands of their agents here without their knowledge, but that he would ascertain where and to whom he should pay said premium; that the agent informed him, April 30th, that he could pay a bank in Taunton, and he tendered the amount accordingly, which was kept a few days and then returned with a statement that the policy was forfeited; that he was always ready and willing to pay, but had not sufficient notice, etc. The bill prays a reinstatement, or certain other relief. The defendant demurs.

The only question argued is whether the bill, upon its face, brings the plaintiff within the principle of *Ins. Co.* v. *Eggleston*, 96 U. S. 572. Both counsel agree that if the assured had been in the habit of paying the premiums to a local agent, the company have no absolute right to change the agency without notice to the assured, and still to insist on payment at the very day; but the defendant insists that the failure to notify must be fraudulent, in order to give the assured an excuse for not paying at the day. They cite *Thompson* v. *Knickerbocker Life Ins. Co.* 2 Woods, 547, but that was a case in which the company had been accustomed to give notice to the assured that his own note was about to become due,—a fact equally within the knowledge of the assured; and it ought certainly to require very strong evidence to erect such a custom into an estoppel, especially as the policy provided that notice should not be required. Undoubtedly, an actual promise to notify one who had not equal means of information would be binding. *Leslie* v. *Knickerbocker Life Ins. Co.* 63 N. Y. 27. And in Iowa a custom to notify was held to have the same effect. *Mayer* v. *Ins. Co. of Chicago*, 38 Iowa, 304.

I understand the case in 96 U. S. not to turn upon a question of actual fraud at all, but on fair and reasonable business conduct, by which one party shall not be misled to his injury by a change of place by the other. It is precisely as if the company itself should

remove its principal office, without notice, to some other city than Washington, and try to forfeit the policies of all those who were misled by the change.

The other question is whether the bill, rightly construed, alleges that the plaintiff was misled to his injury by the change of agency. The narrative is somewhat minute, and not sharply and technically affirmative or negative in its allegations. I agree that all pleadings are to be taken most strongly against the pleader, as was ably and learnedly shown by the defendant's counsel; but I add that a bill in equity is to be read reasonably. I do not find that it can fairly be inferred from this bill that the information, which the plaintiff admits he had three days before April 21st, came from an authorized source, and therefore was notice to him that the bank in Taunton had power to receive the premium. On the contrary, the allegation is that he knew of no one but the former agent, and that he applied to him as soon as he heard about the bank in Taunton. No doubt it would have been easier to apply to the bank itself; but that raises the question whether the supreme court mean to say that the insurance company ought to give notice to their policy-holders, or that the assured are themselves bound to exercise their best diligence. This is not a question to be decided upon this demurrer, because the facts are not sufficiently developed to enable me to decide it understandingly.

On the face of the decision in 96 U. S. I understand that the defendant should have notified the plaintiff. When and under what circumstances notice may be excused, or what sort of notice must be given, or what information on the part of the assured willl dispense with notice, are as yet undecided.

There is nothing in the bill which authorizes me to say that the plaintiff received any notice from the defendant concerning its change of agency.

If I could have ended the case here, there was the temptation to do so, that the costs of a suit must bear a very large proportion to the amount in controversy; but I find in this bill, fairly construed, sufficient equity to put the defendant company to its answer.

Demurrer overruled.