THE PEOPLE ex rel. THE TOWN OF BLENHEIM et al., Appellants, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF SCHOHARIE, Respondent.

In the absence of express statutory provisions, there is no obligation or duty imposed upon towns to contribute to the support of persons residing within their limits.

The expense of supporting an indigent insane person, not a pauper, who has been sent to a lunatic asylum on the certificate of a county judge, acting under the provisions of the act of 1874, relating to the care and custody of the insane (§ 14, chap. 446, Laws of 1874) as amended in 1880 (Chap. 164, Laws of 1880) is a debt of the county, without regard to the places of residence therein of such indigent insane persons.

The expense paid by the county cannot be made a charge upon the town wherein the insane person resided at the time the certificate was granted,

and any action by the board of supervisors of the county to impose a tax upon the property of the town to defray such expense, is without authority.

*People ex rel. Russell* v. *Board of Suprs.* (46 Hun, 354), overruled.

The distinction between indigent insane persons and pauper insane is, that the former are such as usually provide for themselves or are provided for by friends and only need assistance when sent to the asylum under the visitation of insanity and the provision of the statute; when so sent, they are to be supported exclusively at the expense of the county, and this, although the distinction between the town and county poor is preserved in the county.

Where action of a board of supervisors was being taken for the purpose of collecting the expenses paid by the county for the support of indigent insane persons, not paupers, from the respective towns wherein they resided when sent to the asylum, *held*, that the issuing of a writ of prohibition to restrain such action was proper.

*People ex rel. Town of Blenheim* v. *Board of Suprs.* (49 Hun, 308), reversed.

(Argued April 17, 1890; decided June 3, 1890.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made May 1, 1888, which reversed an order of Special Term, granting a motion for a writ of prohibition.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Amasa J. Parker* for appellants. Neither the town of Blenheim nor any of the others of the towns sought to be charged by the prohibited action of the defendants was ever liable for the support of the insane persons in question. But their expenses were made, by the statute, charges against the county. (Laws of 1874, chap. 446, § 14; 7 Hill, 172; Laws of 1842, chap. 135, § 26; *People* v. *Suprs., etc.,* 7 Hill, 171; *Suprs., etc.,* v. *Morgan,* 4 Abb. Ct. App. Dec. 339, 343; *People* v. *Hyde,* 89 id. 18; *Smith* v. *People,* 47 id. 330, 339; Laws of 1847, chap. 706.) When the statute gives the county a remedy over against an individual, or a town, city or county, it is plainly a right of action in the courts that is given, and not the conferring on a subsequent board of the power to collect by tax levy from the parties liable. (1 R. S. [1st ed.] 364,

366; Cothran on Suprs. 615; *C. Bank* v. *Suprs.*, 5 Den. 517; *People* v. *Knox*, 63 How. Pr. 411; *Osterhout* v. *Rigney*, 98 N. Y. 222; *Leavitt* v. *Wolcott*, 95 id. 222; *Appo* v. *People*, 20 id. 531.)

*Hobart Krum* for respondent. The raising by the county of this probable amount a year in advance, and payment to the asylums therefrom by the county treasurer, is positively required by statute. (Laws of 1874, chap. 446, § 31; 3 R. S. [7th ed.] 1901, 1913, 1915, 1931, §§ 6, 23, 31; *People* v. *Suprs.*, 7 Hill, 172; 20 Abb. [N. C.] 123; *Russell* v. *Suprs.*, 46 Hun, 354.) The Statute of Limitations applies to a "special proceeding" as well as to an "action." (Code Civ. Pro. §§ 414, 3333, 3334, 3343). The resolution in question or the proposed action thereunder is in no way or manner a review or correction of the action of any former board. (*Perry* v. *Dickerson*, 85 N. Y. 345; *Emery* v. *Wilson*, 79 id. 78; *Belden* v. *State*, 103 id. 1; *Bell* v. *Merrifield*, 109 id. 202; *Masten* v. *Olcott*, 24 Hun, 587; *R. R. Co.* v. *Elmore*, 53 N. Y. 624.) Should it be held that the proposed action of the board of supervisors of Schoharie county operates simply to reimburse the towns which have overpaid to the county, and to charge it to the towns that have not paid enough to the county, then it is submitted that even this is strictly in accordance with the statute. (3 R. S. [7th ed.] 1913, § 33; Laws of 1874, chap. 446, §§ 7, 33; *People* v. *Suprs.*, 7 Hill, 173; *Bd. of Suprs.* v. *City of Kingston*, 50 Hun, 433; 115 N. Y. 650.) The relators, by not appealing from that part of the Special Term order which authorizes the supervisors under the resolution in question to impose upon any of the towns liable therefor the expense of the insane for the year ending October 1, 1887, and credit to the other towns of the county such sums as they have paid in excess of the lawful charge for the support of such insane in the asylums in question, acquiesced in such decision, and in what is the legitimate result of such decision when carried out to its necessary consequences. (114 N. Y. 12; 98 id. 351–358.)

O'BRIEN, J. The object of this proceeding was to prohibit the county of Schoharie, through its board of supervisors, from proceeding to levy and collect, from certain towns of that county, moneys which the county had paid, and, it is admitted, was bound to pay in the first instance for the support or assistance of certain persons residing or having a legal settlement in these towns. Several indigent insane persons (not paupers) have from time to time, since January 1, 1882, been sent to lunatic asylums, on the certificate of the county judge of that county, acting under the provisions of section 14 of chapter 446 of the Laws of 1874, and have been supported there at the expense of that county and such expense has been levied from year to year each year as it accrued, upon the taxable property of the county, as a debt of the county, without regard to the places of residence in the county of such indigent insane persons. In November, 1887, the board of supervisors passed resolutions, under which they proceeded to take an account of such payment by the county and to charge the several towns in which such indigent insane persons resided, with the expenses so paid by the county during the six previous years and to charge the five towns that are relators in this proceeding with certain large sums claimed to be due by them on account of the expenses of said indigent insane persons who had settlements therein and which had been paid by the county. The board was proceeding to levy these sums upon the several towns when it was restrained by a writ of prohibition granted by the Supreme Court at Special Term upon a hearing. The order awarding the writ has been reversed by the General Term. The question involved is the legal liability of towns to refund to the county the expense paid for the support in lunatic asylums, of indigent insane persons (not paupers) residents of the town. In the absence of express statutory provisions there is no obligation or duty imposed upon towns to contribute to the support of persons residing within their limits. Whatever legal obligations they incur must be met by taxation and the authority of a statute is necessary in all cases, in order to impose a burden upon the

taxable property within the corporate limits of these communities. (*People* v. *Bd. of Suprs., etc.,* 93 N. Y. 397.)

The distinction between town and county poor is preserved in the county of Schoharie, and hence the several towns are required by law to support paupers as defined and provided by statute. (1 R. S. chap. 20, tit. 1, § 14, 614.) If the controversy in this case related only to the obligation of towns to support insane paupers, the question would be free from all doubt as it is conceded that the statute has in terms imposed the obligation upon them. The expense incurred by the county in this case was not for the support of paupers, chargable to the town, but for the maintenance in lunatic asylums of an entirely different class of patients, namely, the indigent insane, who were not paupers, within the definition of such persons given in the statute. Unless it can be shown that a town is liable for the support of its insane, as well as its paupers, the contention of the county authorities in this case must fail. Pauper lunatics may be sent to such public or private asylum as the board of supervisors may by standing order direct, by the superintendent of the poor of the county. (Laws of 1874, chap. 446, § 12.) But when an indigent person (not a pauper) becomes insane, application may be made in his behalf to the county judge and certain other judicial officers whose duty it is to investigate the facts of the case, both as to the question of indigence as well as that of insanity. If the judge certifies that the person has become insane within one year next prior to the granting of the order of admission, and that his estate is insufficient to support him and his family, or, if he has no family, himself under the visitation of insanity, then such indigent insane person is to be received by the authorities of the asylum and cared for till he recovers or for two years, and if no recovery is had within that time, it is the duty of the superintendent of the asylum to notify the county judge of that fact. (§§ 14, 15.)

It will be seen by a careful examination of the statute that there is a clear and well defined difference in the method provided for the maintenance and care of pauper lunatics

and that other class of persons called indigent insane persons, but not paupers. The policy of the state in regard to the latter class is well expressed by an eminent author in the following language: "The law of indigence, as distinct from pauperism, was first introduced among our lunacy statutes in 1842 (Chap. 135, § 26). It was designed for the benefit of that laboring population which is only self-supporting while employed, etc. Hence such persons are accorded a temporary support from the county for a specified time.    *    *    * This support being a county charge, cannot, as in the case of paupers, be cast upon any particular town in which the indigent lunatic may have had a residence." (Ordronaux's Judicial Aspect of Insanity, 87.)

The liability of a town to refund to the county the expense paid for the support of such persons in an asylum was considered and decided in the case of *People ex rel., etc.,* v. *Suprs. of Genesee Co.* (7 Hill, 171), approved in *Suprs. of Onondaga* v. *Morgan* (4 Abb. Ct. Ap. Dec. 339), and it was there held that no such liability existed. That case arose under chapter 135 of the Laws of 1842. BRONSON, J., delivering the opinion of the court described this class of patients and stated the law governing the question in language which we think, is applicable to the case at bar: "They are such as usually provide for themselves, or are provided for by friends, and who only need assistance when sent to the asylum under the visitation of insanity. It is accordingly provided that they shall be admitted into the asylum, and supported there *at the expense of the county.* As it is a new class of persons, the case does not come within the operation of any prior law, and there is nothing to relieve the county from the burden expressly laid upon it by the twenty-sixth section of the act."

In view of this decision it is only necessary to consider the question whether, by any legislation since enacted, the law applicable to the support and maintenance of such persons, in the asylum, has been changed. By the act of 1874 (chap. 446), all pre-existing statutes relating to the care and custody of the insane were revised and consolidated into one act as is

indicated by the title. All the material provisions of the act of 1842, relating to the subject now under consideration were retained. Section 14 of the consolidated statutes, as amended by chapter 164 of the laws of 1880, makes it the duty of the county judge, who grants an order committing an indigent insane person to the asylum, to file the papers in the proceeding with the county clerk and to report the facts to the supervisors, " whose duty it shall be at their next annual meeting to raise the money requisite to meet the expense of support of such indigent lunatic." Thus the obligation of providing the necessary means to defray the cost of maintaining the indigent insane person committed to the asylum by the county judge is imposed upon the county from which he is sent.

In the absence of an express statute, enabling the county to collect the money so raised and paid from the town in which the person so committed resided at the time of granting the order, a proceeding for that purpose cannot be maintained and any action of the supervisors for the imposition of a tax upon the property in the town, for that purpose, is without authority. It has been held by the Supreme Court in a proceeding against the board of supervisors of Herkimer county, that this power was conferred by section 16, of article 1, and by section 31 of title 3, of the act of 1874. (*People ex rel. Russell* v. *Bd. of Suprs.*, 46 Hun, 354.)

That case was followed by the General Term in the decision of the case at bar. It is provided by section 16 that " the expense of sending any lunatic to a state asylum, and of supporting him there, shall be defrayed by the county or town to which he may be chargeable," and by section . 31, " that the expense of clothing and maintaining in an asylum a patient who has been received upon the order of any court or officer shall be paid by the county from which he was sent to the asylum. * * * Said county, however, shall have the right to require any individual, town, city or county that is legally liable for the support of said patient, to reimburse the amount of said bills with interest from the date of paying the same." It must be noted that these provisions of law existed

when the case of *People* v. *Supervisors of Genesee* (*supra*) was decided (Laws of 1842, § 37; 1 R. S. [3d ed.] 806), and it was held in that case that when the statute described persons "chargeable" to a town, or for the support of whom a town was "legally liable," it referred to such only as were a public charge upon the town when they became insane, or when the order committing them was made. When an indigent insane person, not a pauper, is sent to the asylum, he is not then "chargeable" to any town, nor is the town "liable for his support." These terms, when used in the statute, we think, refer to the pauper and not the indigent insane, and such was the opinion of Bronson, J., in the case above referred to. Much prominence was given upon the argument by the counsel for the respondent to the fact that in the revision and consolidation of the statutes relative to the care and custody of the insane in 1874, the words contained in the twenty-sixth section of the act of 1842, that an indigent insane person admitted into the asylum shall be " supported there at the expense of said county," were omitted. As the legislature repealed all prior statutes inconsistent with the one then enacted, it is urged that the omission of these words in the revision indicates a clear intent to shift the burden of supporting the indigent insane in the asylum from the county to the towns. In uniting in one act the various provisions of law relative to the care of the insane, different sections have been so combined and blended together with some new provisions that the exact meaning is, in some cases, rendered obscure. But the obligation of the county to pay the expense of the person committed to the asylum by the county judge under the fourteenth section is expressed, if not in the same, certainly in language equivalent to that used in the act of 1842, and it is, as we think, reasonably free from doubt. Besides, it does not help the respondent's contention, even if it could be shown that the language has been so changed that the obligation of the county to support the class of persons now under consideration is expressed in terms less clear and explicit in the new statute than in the old, so long as this duty was not in any

express words or by necessary implication "imposed upon the towns." If the legislature intended to change the law by creating against towns an obligation to support the indigent insane residing therein that did not exist before, it certainly failed to introduce any new provisions into the statute sufficient to accomplish such a purpose. We do not think it was intended to change the policy of the state as expressed in the act of 1842, which evidently was to require the county alone to bear the expense of maintaining the indigent insane, not paupers, in the asylum for a limited time, in the hope and for the purpose of effecting a recovery from the visitation of insanity, and thus save such persons from becoming paupers, to be chargeable, when such, either to the town or the county. Our conclusion is that in this case the county had no lawful claim to be reimbursed by the towns for the expenses paid, and for maintaining in the asylums the indigent insane persons committed upon the certificate of the county judge, and who were residents of the towns, and that the action of the board of supervisors to that end was properly restrained by the writ of prohibition.

It follows that the order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs in all courts to the relators.

All concur.

Order reversed and judgment affirmed.