People's Mutual Benefit Society *v.* Werner, Administratrix.

No. 880.

PEOPLE'S MUTUAL BENEFIT SOCIETY *v.* WERNER, ADMINIS-
TRATRIX.

LIFE INSURANCE.—*Assessment Plan.—Bi-Monthly Pools.—Matured Claims;
How Paid.—Contested Claims.—Action on Judgment.—Merger of Defenses in
Judgment.*—Where a life insurance company, doing business on the mu-
tual, or assessment, plan, issued a policy for $1,000, and it was provided
in the contract of insurance, that each calendar year should be divided
into six bi-monthly periods, designated as pools; that shares maturing
shall be paid with the pool of the months in which the proofs of death
maturing the same are approved by the society, and in case any shares
mature, the payment of which is contested by the society, and a judg-
ment is rendered in favor of the plaintiff, said shares shall be placed in,
and paid with, the pool then forming, the policy, if a valid and sub-
sisting claim, is entitled to be paid out of the fund created and set apart
therefor at the time of the intestate's death; and, where a judgment is
obtained for the full amount of such claim, and suit is instituted on such
judgment, it is not sufficient for the company to answer, that the claim
was rejected because it believed the claim to be fraudulent and unjust,
and that the judgment should be paid *pro rata* out of the pool forming
when the judgment was rendered, which *pro rata* share would amount to
$260, and no more; that defendant had repeatedly offered to pay plaintiff
said sum, but had as often been refused, and that defendant brings said
sum into court and offers to allow judgment to be entered against it for
such sum and costs and costs accruing, the amount which the plaintiff
should recover was a question for decision in the original action, and all
matters of defense, as to any or all of such amount, were merged in the
judgment in that action.

*Quære*, can a condition in a contract of insurance, which undertakes to vary
the amount the beneficiary shall receive in satisfaction of a judgment, as
by making the amount of payment depend upon future contingencies, be
enforced?

SAME.—*Property Rights not Abridged by Arbitrary Action of Company.—Courts'
Jurisdiction.*—Under such a policy, the company can not abridge or de-
stroy the property rights of a member, by the arbitrary decision of its
officers that a claim is invalid. Such act would be an infringement upon
the functions of the courts, and therefore invalid.

From the Elkhart Circuit Court.

*J. H. Baker, F. E. Baker, O. Z. Hubble* and *O. Conley,* for appellant.

*E. C. Dodge,* for appellee.

REINHARD, C. J.—The appellee sued the appellant in the court below on a judgment recovered in the Circuit Court of Will county, Illinois, for $1,000 and costs. The court below sustained a demurrer to the special and sole answer of the appellant, and rendered judgment for the appellee for the full amount of her claim. The single question presented for our consideration is that of the sufficiency of the answer.

The appellant is a life insurance corporation organized under the laws of the State of Indiana, where it exists and carries on its corporate business of life insurance on the mutual or assessment plan. See act approved March 9, 1883, Elliott's Supp., section 970. The answer avers, among other things, that the judgment declared upon was recovered on an insurance policy or certificate which is copied into the answer at length. One of the printed conditions of said policy is as follows:

"11. That this society shall at no time, nor under any circumstances, make to exceed one assessment per month; and the losses of each alternate two months of each year (beginning with the first two months) shall be paid by the assessments of the following two months. (Losses of January and February, paid by the March and April assessments, and the March and April losses by the May and June assessments, etc.) But should the losses of any two months amount to more than 80 per cent. of the amount collected from the assessments of the two months following, then, and in every such case, the 80 per cent. of the amount so collected shall be divided *pro rata* among the beneficiaries of said two months' losses, and the amount so divided shall be received and accepted as full payment of the certificate or certificates held as aforesaid. Should

one assessment be sufficient to pay two months' losses, then only one assessment shall be made during the two months. If two are required, two will be made—one each month, etc. All losses shall be classed and paid with the pool of the months in which the proofs of deaths are approved by the society, and in case this certificate becomes a claim, and is contested by the society, and a judgment is rendered in favor of the plaintiff, said judgment shall be placed in and paid *pro rata* with the pool then forming."

It is further alleged that the by-laws of said society, which had been adopted long before the appellee's intestate became a member, and remained in force at and after the time of his death, provided, among other things, as follows:

"Section 23.   Each calendar year shall be divided into six parts designated as pools.   Each pool consisting of two calendar months, beginning with January and February for the first pool; March and April for the second; May and June the third; July and August the fourth; September and October the fifth; and November and December the sixth.

"Section 24.   The society shall at no time, or under any circumstances, make to exceed six assessments per year; and 80 per cent. of the entire amount collected from the assessment levied in January, and each pool thereafter, shall be placed in a burial fund and divided equally among the shares (*i. e.*, claims for death loss), which mature and are approved during the pool next preceding the one in which the assessment is levied, and the amount so divided shall be considered as payment in full of the certificates terminated in said pool, and shall be so received by the beneficiaries named therein, or the legal holder thereof, who shall properly receipt the same in accordance therewith, and deliver them to the society at Elkhart, Indiana, upon the payment to them of said sum.   If no shares mature during any pool, no assessment will be

made during the next. All shares maturing shall be paid with the pool of the months in which the proofs of death maturing the same are approved by the society. In case any shares mature, the payment of which is contested by the society, and a judgment is rendered in favor of the plaintiff, said shares shall be placed in, and paid with, the pool then forming."

The answer avers that the claim upon which said judgment is founded was believed by said company to be fraudulent and unjust, and was rejected, and was for that reason not placed in the pool for March and April, 1889, out of which said claim would have been payable *pro rata*, if it had been approved. It is further stated that the appellee, upon said rejection of said claim, brought suit to recover the full amount of said policy in said court, and to establish the validity of said claim, and to liquidate and settle by the judgment of said court the amount at which said claim and judgment should be placed in the pool forming at the time said claim might become a judgment of said court; that the appellant contested the claim in said court, but that upon proper proceedings had it was adjudged to be valid, and the amount thereof, as provided in said policy or certificate, was adjudged to be $1,000 and cost of suit taxed at $69.40, which is the judgment sued upon. It is averred that the company formed pools in compliance with its by-laws and the provisions of the policy, and placed said judgment in the pool forming when the judgment was rendered (November 26, 1890), that is to say, in the pool forming for the months of November and December, 1890, and that out of the pool thus formed, it made a *pro rata* distribution among all the claims placed in, and entitled to payment out of, the same, including appellee's judgment with interest and cost; that the amount of the appellee's *pro rata* share of said pool is $260, and no more; that appellant had collected all the assessments for said pool which could be collected, and that it had repeatedly

offered to pay said appellee the said amount she was entitled to receive, but she had as often refused to accept the same, and that the appellant now brings the said amount of $260 into court, and offers to allow judgment to be entered against it for said sum and costs and accruing costs.

Nothing is better settled than the rule that a member of a mutual benefit society is required to take notice of its by-laws, and is bound by their provisions.   When a certificate of insurance is issued to him by such society, the by-laws relating to the subject, as well as the conditions incorporated in the certificate itself, become part and parcel of his contract of insurance, and, if valid, are mutually obligatory upon both the company and the member holding the certificate.   Of course the society is powerless to enforce conditions in the by-laws or certificate by which it assumes to deny to the courts of the land the ultimate right of deciding all controverted questions between the body and its members touching the right and extent of recovery upon the policy or certificate, though it may lawfully provide by such by-laws, or the conditions in the certificate, that the claim shall be first submitted for adjustment to certain designated officials or boards of the society, and that in such process of adjustment it shall pass through certain channels of appeal until it has received the sanction or disapproval of the association.   *Supreme Council Chosen Friends* v. *Forsinger*, 125 Ind. 52.

A provision looking to the adjustment of death claims, made on the basis of regular assessments, the proceeds of which are to be used to form pools, periodically, out of which such claims are to be paid *pro rata*, is a valid one, and if incorporated in the by-laws or certificate, and if seasonably and properly asserted, may be enforced by either of the parties.

In the case at bar, the society, under the provisions of its by-laws, formed and maintained two distinct mortuary

funds,—one for the payment of death claims, to be paid upon adjustment of the proper board to which such claims were submitted, and the other for the payment of judgments of courts upon litigated claims. The pool for the payment of the former class was formed out of assessments made during the stated bi-monthly period in which the death occurred, or the proof thereof was submitted, while the pool for the payment of the latter class was created by assessments made during the period of the two months in which the judgment was rendered. The amount to be paid upon such claims depended upon the number of assessments on the one hand, and the number of deaths on the other. If the membership was full, and each member paid his periodical assessment, and there was but one death during the period, the beneficiary would be entitled to receive the full amount specified in the certificate. If the assessments paid were fewer in number than the whole membership, or the deaths greater in number than one during such period, the beneficiaries would receive a correspondingly decreased amount. The number of assessments, also, depended upon the number of deaths, for it was provided that, in any event, not more than one assessment should be made upon a member during any one month, and in case of but one death during any two months in which the pool was forming, then only one assessment should be made upon each member during such period of two months. The amount going to the beneficiary depended further upon the longevity of the member insured after the time the certificate was issued to him.

It is not shown in the answer how much the appellee would have been entitled to receive out of the pool forming at the time of the intestate's death, on proof thereof. For aught that appears, the proper amount may have been just $1,000, the amount of the judgment recovered, and, in the absence of any showing to the contrary by the answer, it must be conclusively presumed that this was the

correct amount, for it can not be denied that this was a question that might have been litigated in the court that rendered the judgment declared upon, and, where that is. the case, the judgment is conclusive as to all such questions.

Assuming, therefore, as we must, that the pool out of which this claim would have been payable, had it not been contested, was sufficient to entitle the appellee to receive the full amount of $1,000, the question arises, does the answer set up a sufficient excuse for the appellant's failure and refusal to place the claim in such pool, and for placing it in one which paid only $260 in satisfaction of the same claim?

Surely, if the claim was a just one, the appellant should have paid it out of the fund created and set apart therefor at the time of the intestate's death. The excuse given for not doing this is contained in the following clause of the appellant's answer:

"And the said defendant further says that said claim for the death of the plaintiff's intestate was believed by it to be fraudulent and unjust, and thereupon, for that reason, it rejected said claim, and refused to allow the same, and refused to place the same in the pool for March and April,. 1889, out of which pool said claim would have been payable *pro rata*, if such claim had been approved by it as a valid claim and death loss."

Was this a valid reason for the refusal? We are of the opinion that the question must be answered in the negative.

Whether the claim was or was not "fraudulent and unjust" was a matter for the decision of the court that rendered the judgment. The mere fact that the appellant. believed it to be such was not sufficient to withhold payment, if, in fact, the claim was just and *bona fide.* The beneficiary, by the death of the assured, and his contract with the society, acquired a right to share in a certain

fund, and could be deprived of that right only because the deceased or beneficiary had done something, or omitted to do something, that would legally result in such a consequence. The question whether the estate of the deceased member should share in such fund or not can not depend upon the mere arbitrary notions of right or wrong entertained by the officers of the society, to whom the adjustment of such claims is referred. In other words, the assured could forfeit the rights secured by the policy only by his own acts, and they could not be taken away by the acts of the company, and without any fault on his part. The association may provide for the submission of claims to its officers, and this may even be made a condition precedent to the bringing of a suit upon the certificate, but here its power ends. The corporation can not abridge or destroy the property rights of a member by the arbitrary decision of its officers 'that a claim is not valid. Such an act is but an attempt to deprive the courts of their rightful jurisdiction over such questions, and not within the power of the body or its officers. *Supreme Council Chosen Friends* v. *Forsinger, supra;* 11 Am. and Eng. Ency. Law, 353.

The fund provided for the payment of death losses arising out of assessments made during the bi-monthly period in which the intestate died was the primary fund out of which the appellee had the right to be paid, and the answer fails to show any valid reason why such payment should not have been made therefrom, or in an amount equal to that to which the appellee was entitled out of the same.

Moreover, the amount which the appellee should recover was a question for the decision of the Illinois court, and all matters of defense as to any or all of such amount are merged in the judgment.

This is not a case of an attempted compromise after suit, where the parties stipulate, in consideration of the judgment, how the same shall be paid, and the cases cited

by the appellant's learned counsel, bearing upon such questions, are, therefore, not in point.   That an assessment for the specified period would not produce a sufficient amount to pay the certificate, or any portion thereof, was a matter of defense in the suit upon the certificate.   *Elkhart Mut. Aid, etc., Ass'n* v. *Houghton*, 103 Ind. 286.

Whether a condition in a contract of the character of the one here involved, which undertakes to vary the amount the beneficiary shall receive in satisfaction of a judgment from that designated in the judgment itself, as by making the amount of such payment depend upon future contingencies, can ever be enforced, may well be doubted, we think.

Our conclusion is that the ruling upon the demurrer was not erroneous.

Judgment affirmed.

