SUPREME COUNCIL CATHOLIC BENEVOLENT LEGION
*v.* GROVE.

[No. 21,892. Filed October 24, 1911.]

1. INSURANCE.—*Mutual Benefit.*—*By-Laws.*—*Making Action of Society Final.*—*Public Policy.*—*Courts.*—*Fraud.*—A provision in the constitution and by-laws of a beneficial association making the action of the president and supreme council of the order final, is void, as against public policy; and it is immaterial whether their action in making a decision was honest or fraudulent. p. 362.

2. INSURANCE. — *Claims.* — *Submitting to Arbitration.*—*Action.*— Where the by-laws of a fraternal insurance association provide for arbitration of claims, they must ordinarily be submitted to arbitration as a condition precedent to the maintenance of an action thereon.   p. 363. .

3. COURTS.—*Judges.*—*Deciding Cases in which they have interest.* —No one should be permitted to decide his own case. .   p. 363.

4. INSURANCE.—*Payment of Benefits.*—*"May."*—*Construction of.*— An insurance certificate issued in accordance with the order's constitution and by-laws, providing that on a member's death the amount of his certificate shall be paid to his beneficiary and that half the amount thereof "may" be paid to such member in case he becomes disabled, or destitute, will be construed as giving the members the right to collect such benefits themselves, the word "may" being interpreted to mean "shall."   pp. 363, 364, 365.

5. INSURANCE. — *Policies.*—*Construction.* — Insurance policies are construed liberally in favor of the insured.   p. 364.

6. INSURANCE.—*Policies.*—*Inconsistencies.*—*Doubts.*—Questions of doubt or inconsistency in insurance policies are resolved most strongly in favor of the insured.   p. 365.

7. INSURANCE. — *Mutual Benefit.* — *Assessments.* — *Complaint.*—A complaint upon an insurance certificate providing that the benefits should never exceed the amount collectible at one assessment upon the members does not need to allege that there was any benefit fund on hand or that one assessment would furnish the amount specified in the certificate, such matters constituting partial defenses to the action.   p. 366.

8. INSURANCE.—*Settlement.*—*Return of Policy.*—*Denial of Liability.*—*Complaint.*—A complaint by assured for benefits alleged to be due on an insurance certificate need not show an offer to return the old policy and accept a new one, as provided in the original policy, where the company denied all liability and where the complaint alleged that the plaintiff had performed all the conditions on his part.   p. 367.

9. INSURANCE.—*Mutual Benefit.*—*"Destitute of the Means of Support."*—*Wife's Means.*—A husband, 71 years old, disabled from work, and possessed of no property, but receiving a revocable gratuity of $29.65 a month from a relief association, is "destitute of the means of support," within the meaning of a benefit certificate, though his wife has property in her own right sufficient to maintain both of them.   pp. 367, 369.

10. HUSBAND AND WIFE.—*Support of Husband.*—*Property Rights.* —A married woman is under no legal duty to support her husband ; and a wife's property is not subject to his wishes nor for the payment of his debts.   p. 369.

11. INSURANCE.—*Policies.*—*Construction by President of Order.*— *Effect.*—The construction placed upon a phrase of a benefit cer-

tificate by the president of an order is not binding upon the assured, where notice of such construction was never given; and notice cannot be imputed where by secret understanding the president of the order places a construction upon a phrase, upon which the law places its own construction; and no adjustment of the rates on the basis of such construction is effectual as against an assured who has no notice thereof.   p. 370.

12.   CONTRACTS. — *Construction.* — *Customs.* — *Usages.* — Contracts should be construed in the light of known customs and usages of commerce or trade.   p. 372.

13.   INSURANCE.—*Assessments.*—*Notice.*—*Waiver.*—Where the by-laws of a benefit society provide that no notice of regular assessments shall be given, the uniform course for many years of giving such notice constitutes a waiver of the society's right to insist upon a forfeiture for assured's failure to pay the assessment on the 13th day of the month, where he duly tendered such assessment on the 14th, when he became aware of such assessment, and brought the tender into court.   pp. 372, 375.

14.   INSURANCE.—*Suspension.*—Provisions in the by-laws of a benefit society for suspension of a member for failing to pay his assessments are valid and self-operative.   p. 374.

15.   INSURANCE.—*Forfeiture.*—*Notice.*—Where notice of an assessment is required by the by-laws of a mutual benefit society there can be no forfeiture in the absence of such notice.   p. 375.

From Superior Court of Allen County; *Owen N. Heaton,* Judge.

Action by Maxwell J. Grove against the Supreme Council Catholic Benevolent Legion. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Affirmed.*

*Breen & Morris,* for appellant.

*Walpole G. Colerick,* for appellee.

MYERS, J.—The Catholic Benevolent Legion is an association composed of a supreme council, and state and subordinate councils. The supreme council is an incorporated body, with power to make its own constitution, rules of discipline, and laws for the government of the entire legion. It is the body to which final appeals are to be made in all matters of importance emanating from state and subordinate councils.

On October 19, 1886, appellee became a member of the Catholic Benevolent Legion, and there was issued to him what is known as a fourth-grade certificate, whereby appellant promised to pay to appellee's wife, Emma J. Grove, upon the death of appellee, a sum not exceeding $3,000, and also promised to pay appellee a sum not exceeding $1,500, upon due proof that he had arrived at the age of expectancy, and that he was permanently disabled, unable to earn a living, and was destitute of the means of support. This action was brought by appellee to recover from appellant one-half the amount of said benefit certificate, on the ground that he had arrived at the age of expectancy as fixed by the laws of the association, was permanently disabled, was unable to earn a livelihood, and was destitute of the means of support.

The complaint was in one paragraph, the material allegations of which are that at the time the benefit certificate was issued, appellee was, ever since has been, and still is, a member in good standing in Saint Julian Council in said legion; that at all times and in all things he has faithfully observed, complied with and performed all duties and obligations required of and imposed upon him by the laws of appellant; that he has promptly paid to appellant all dues and assessments imposed upon or required to be paid by him under its laws; that during said period he paid appellant about $2,000; that since January 15, 1903, he has been and still is out of employment, by reason of his physical inability to perform labor; that on or about October 31, 1905, in accordance with the laws of appellant, he presented to Saint Julian Council, of which he was then, and . still is, a member, his written application to obtain the benefits to which he was then, and still is, entitled by reason of the benefit certificate issued to him by appellant; that the grounds on which he bases his application for the payment of $1,500 to him is that he is seventy-one years old, and permanently disabled from attending to his business or

gaining a livelihood, and is destitute of the means of support. The facts are then alleged in detail as to the presentation of this request in the manner prescribed in the by-laws of appellant, which are set out, its disallowance by the president of the supreme council, who "wrongfully and unjustly rejected said application, and wrongfully and unjustly disallowed appellee's claim, * * * and disapproved his application," from which decision he appealed to the supreme council, and that the decision of the president was sustained, on the ground that appellee was not destitute of means of support. Appellee's claim was refused, and is due and unpaid; and the action of appellant under its laws is declared to be final.

The portions of the constitution and by-laws of appellant material to the cause are sections two and six of Chapter I, reading as follows:

(2) "Five thousand dollars shall be the largest amount paid by this legion on the death of a member. And $2,500 shall be the largest amount paid for permanent disability benefit. Five thousand dollars shall be paid on the death of every sixth-grade member; $4,000 on the death of every fifth-grade member; $3,000 on the death of every fourth-grade member; $2,000 on the death of every third-grade member; $1,000 on the death of every second-grade member; $500 on the death of every first-grade member, and $250 on the death of every industrial-grade member. And one-half the amount of each grade may be paid to a member of that grade who shall become permanently disabled from attending to his business or gaining a livelihood, and who is destitute of means of support, when he shall arrive at the age of expectancy as determined in the following table, unless otherwise provided by the law of the state in which the council is located, in which case the age of expectancy shall conform to the law of said state. Provided, however, that should a death occur, or a permanent disability be approved by the supreme council when one assessment on each member of the legion would not amount to $5,000, then the sum paid shall be a proportionate amount of one assessment on each member in good standing in the legion on the date of its

call, according to the grade of the deceased or disabled member; and such proportionate amount shall be all that can be claimed by anyone."

(6) "When application shall be made by a member for a permanent disability benefit, the president of the council of which he is a member shall appoint a committee of three, who, with the medical examiner, shall investigate the application, and report in writing to the council the nature, cause, duration, and all other circumstances attending such disability. The secretary of the council shall notify all other councils within the district of such application, and give the names and addresses of the members of the committee so appointed. If the report of such committee be in favor of the application, the president shall announce that a ballot upon the granting of the same shall be taken at the next stated meeting of the council. At the next stated meeting such ballot shall be taken under the same rules as govern the ballot for admission to membership. If the application be granted by the council, notice of such action shall be forwarded to the secretary of the supreme council in the same manner as in case of death as provided for in §3, so far as applicable. On the receipt of such official notice of permanent diability application, the secretary of the supreme council shall forward the same to the president of the supreme council, who shall make further investigation if deemed necessary and on his final approval he shall direct the secretary of the supreme council to draw an order on the treasurer of the supreme council in favor of the disabled member. The secretary of the supreme council shall thereupon draw such order for the amount specified, and on receipt of the treasurer's check, properly countersigned, forward it to the treasurer of the council of which the applicant is a member. The decision of the president in allowing or disallowing claims for permanent disability benefits shall be final and binding if no appeal be taken to the supreme council. Appeals may be taken to the supreme council within thirty days after notice of the president's decision shall have been given the applicant; and the decision of the supreme council on such appeals shall be final."

A demurrer was unsuccessfully interposed to this complaint, on the ground of insufficiency of facts to constitute a cause of action, which ruling is the first alleged error assigned.

The first point made is that as the laws of appellant make the action of the supreme council final, appellee is without remedy, unless he alleges and proves that the action

1. was fraudulent, or that he was deprived of a fair hearing, and that the allegation that the action of the president was wrongful and unjust is a mere conclusion. If the complaint were based upon that fact, appellant's position would doubtless be correct, but it is not based upon that fact, but upon the broader fact that the provision making the action of the president and council final is void, as being against public policy.

We are not advised of any statute of this State pertinent to the questions involved.

It would be futile to attempt to reconcile the decisions in the various states upon the question of making final the decisions of the supreme tribunals of fraternal orders, and thereby excluding members from resort to the courts of law. It is sufficient to point out that our own courts have steadfastly denied the right of exclusion, in which many other states concur. *Supreme Council, etc.,* v. *Forsinger* (1890), 125 Ind. 52, 21 Am. St. 196, 9 L. R. A. 501; *Supreme Council, etc.,* v. *Garrigus* (1885), 104 Ind. 133, 54 Am. Rep. 298; *Bauer* v. *Sampson Lodge, etc.* (1885), 102 Ind. 262; *Voluntary Relief Department, etc.,* v. *Spencer* (1897), 17 Ind. App. 123; *People's Mut. Benefit Soc.* v. *Werner* (1893), 6 Ind. App. 614; *Supreme Lodge, etc.,* v. *Raymond* (1897), 57 Kan. 647, 47 Pac. 533, 49 L. R. A. 373 and notes; *Pepin* v. *Society St. Jean Baptiste* (1901), 23 R. I. 81, 49 Atl. 387, 91 Am. St. 620, and cases cited; *Robinson* v. *Templar Lodge, etc.* (1897), 117 Cal. 370, 49 Pac. 170, 59 Am. St. 193 and notes; *Railway Conductors, etc., Assn.* v. *Robinson* (1893), 147 Ill. 138, 35 N. E. 168.

Upon the general question that there can be no agreement in advance of a controversy, whereby the jurisdiction of the civil courts is ousted, see *Ditton* v. *Hart* (1911), 175 Ind. 181; *Board, etc.,* v. *Gibson* (1902), 158 Ind. 471; *Mc-*

*Coy* v. *Able* (1891), 131 Ind. 417; *Myers* v. *Jenkins* (1900), 63 Ohio St. 101, 57 N. E. 1089, 81 Am. St. 613; *Maitland* v. *Reed* (1906), 37 Ind. App. 469.

If the action of the supreme council could not be made final as to a question of property rights, as we hold

2. it could not, it was immaterial whether fraud or honesty entered into the action.

But it is urged that, even though a contract that will oust the jurisdiction of the courts cannot be made in advance of a controversy, when a controversy does arise— that is, when a claim is made—such claim may be submitted to arbitration, and that this was done in this case. The cases agree substantially, that where in a fraternal association a method of procedure is provided for determining controversies, the procedure must be followed as a condition precedent to an appeal to the courts, and this is the rule in this State. *Supreme Council, etc.,* v. *Forsinger, supra; Supreme Council, etc.,* v. *Garrigus, supra.*

The reason of the rule lies deeper than the mere matter of power to submit to arbitration, in the fact that it is entirely inconsistent with, and repugnant to, all ideas

3. of justice that one should be an arbitrator in his own case, and that the laws of the land should be superseded, and the courts ousted of jurisdiction to interfere with and enforce them, by the very contract that is in question.

It is urged that it is optional with appellant

4. whether it will pay in advance of the death of the member, owing to the clause in the contract that one-half the schedule amount

"may be paid to a member of that grade [to which he belongs] who shall become permanently disabled," etc.

In determining that question we are aided by the declared purposes of the legion, as expressed in its constitution, which, among others, is

"to afford moral and material aid to members and their dependents, by establishing a fund for the relief of sick and distressed members, and to establish a benefit fund from which, on satisfactory evidence of the death of a member, a sum not exceeding $5,000 shall be paid to his legally designated beneficiary, and from which a sum not exceeding $2,500 may be paid to a member who shall have become permanently disabled," etc.,

and who has arrived at a given age and who has become indigent, the objects are humane and laudable. There is as much reason for their application to a member in his lifetime, as to a designated beneficiary after his death, if he comes within the classification of the bounty. The supreme council should have and does have no more power to determine for itself whether he shall be paid than it has to stand upon its action as final in determining whether he falls within the classification. It has no such power in either case, provided he comes within the classification. It should not have, and has not, the power to determine for itself when it will administer a fund, the very object of which is to provide for a designated class. The word "may" here used should read "shall," when a case is in fact made which brings a member within the class. It is a familiar rule that such contracts are liberally construed in favor of the insured, to effect the objects of the organization; and when the property rights of third persons are involved, the permissive word "may" should be read as the mandatory word "shall," in order to enforce legal rights; or, in case of doubt, the contract will be most strongly construed against the party who stipulates for the payment of a debt, or the performance of a duty, so as to give validity and effect to a contract. Although one clause of the section provides that a certain sum "shall" be paid, while another uses the term "may" be paid, the language used creates a strong inference that the second provision is mandatory, because it springs from the same source, and the reason for payment is the same in both. The reason for the

rule is the same in this class of contracts as in cases of statutes. Wilberforce, Stat. Law 204; *Penn Mut. Life Ins. Co.* v. *Wiler* (1885), 100 Ind. 92, 50 Am. Rep. 769; *Union Life Ins. Co.* v. *Jameson* (1903), 31 Ind. App. 28; *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651; *Continental Ins. Co.* v. *Vanlue* (1891), 126 Ind. 410, 10 L. R. A. 843; *Rogers* v. *Phenix Ins. Co.* (1890), 121 Ind. 570; *Supreme Lodge, etc.,* v. *Schmidt* (1884), 98 Ind. 374; 1 Cooley, Briefs on Ins. 632-634; *Livingston* v. *Arrington* (1856), 28 Ala. 424; *Noonan* v. *Bradley* (1869), 9 Wall. 394, 19 L. Ed. 757.

It is well established that if two parts of an insurance contract are inconsistent, or the contract is doubtful, the one will be adopted that is most favorable to the assured. *Union Life Ins. Co.* v. *Jameson, supra; Hanover Fire Ins. Co.* v. *Dole* (1898), 20 Ind. App. 333; *Northwestern, etc., Ins. Co.* v. *Hazelett* (1886), 105 Ind. 212, 55 Am. Rep. 192; *Peele* v. *Provident Fund Soc.* (1897), 147 Ind. 543; *Standard Life, etc., Ins. Co.* v. *Martin* (1893), 133 Ind. 376; *Supreme Tent, etc.,* v. *Volkert* (1900), 25 Ind. App. 627, 644; *Olmstead* v. *Farmers, etc., Ins. Co.* (1883), 50 Mich. 200, 15 N. W. 82; *Switchmen's Union, etc.,* v. *Colehouse* (1907), 227 Ill. 561, 81 N. E. 696.

The declared objects of the legion are to give material aid, to relieve sick and distressed members, and to pay a beneficiary at death, from which benefit fund not more than one-half may be distributed to the living member. The construction as we read it is that the provision that one-half "may be paid," is a precautionary provision against paying the whole to a beneficiary after death, by the modification that one-half may be paid to the living member upon certain conditions, which, if they arise, make the obligation a mandatory one as against the legion, and a protective one in its favor, as against the beneficiary. The construction put upon the contract by the legion would result in the by-law's defeating the object of

its creation, and toward which object appellee has con-
tributed over $1,700, which ought not to be permitted, and
which no rule of law or justice forces us to uphold. *Su-
preme Lodge, etc.,* v. *Abbott* (1882), 82 Ind. 1.

It is next contended that there is no averment of any
benefit fund on hand, or of how many members were in the
legion, or of what an assessment would amount to,
7.   or of what amount he was entitled to. The by-laws
require assessments to create a benefit fund. Ap-
pellee, however, was restricted to a recovery of an amount
which one assessment upon appellant's members would pro-
duce. Appellee could not know how many members there
were, nor what, if any, amount was on hand applicable to his
certificate, nor what one assessment would produce. That
was all within the knowledge and control of appellant, and
varied with the number who should pay. So long as there
were any members the complaint was good as to the amount
one assessment would produce. All these things were mat-
ters of defense. Appellant did not defend on any of those
grounds, but upon the ground that its council had deter-
mined that appellee was not "destitute of the means of
support." It informed appellee that its action was final
in the absence of fraud or unfairness. It is but just
and reasonable, under a contract providing specifically for
payment, that if there be any exception by which payment
should not or could not be made, it should be and is a
matter of defense. *Elkhart Mut. Aid, etc., Assn.* v. *Hough-
ton* (1885), 103 Ind. 286, 53 Am. Rep. 514; *People's Mut-
Benefit Soc.* v. *Werner, supra; Supreme Council, etc.,* v.
*Anderson* (1884), 61 Tex. 296; *Lueders's Executor* v. *Hart-
ford, etc., Ins. Co.* (1882), 12 Fed. 465; *Garretson* v.
*Equitable, etc., Assn.* (1888), 74 Iowa 419, 38 N. W. 127;
Niblack, Mut. Ben. Ins. §337.

It is claimed that there is no allegation that appellee
before bringing the action offered to surrender his benefit

certificate, and accept a new certificate in lieu thereof, for one-half the amount, upon payment of one-half. In the application for the benefit, appellee asked that steps be taken under sections two and six of the by-laws, in which the method of procedure is pointed out, and that he be paid $1,500, as therein provided. His return of the certificate and the acceptance of a half certificate was of course necessary before the transaction could be concluded by payment, but section six requires only that if his claim is approved an order shall be drawn for its payment, and forwarded to the local council of which he was a member, where consummation would be had. He could not be required to show an offer of surrender to the local council, when the supreme council denied liability. Besides, it is alleged that appellee in all things complied with all duties and obligations required of, and imposed upon him by the by-laws of the society. But here again appellant is concluded by its notice to him that his claim was disallowed because he was not "destitute of the means of support," wholly disavowing liability. The rule is the same as in case of any other waiver, for example, proofs of death or proofs of loss where liability is wholly denied, and especially where the specific grounds are stated. *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379; *Ohio Farmers Ins. Co.* v. *Vogel* (1906), 166 Ind. 239; 3 L. R. A. (N. S.) 966, 117 Am. St. 382; *Germania Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392; *American Cent. Ins. Co.* v. *Sweetser* (1888), 116 Ind. 370; *Commercial Union Assur. Co.* v. *State, ex rel.* (1888), 113 Ind. 331. We perceive no objection to the complaint.

The real controversy in the case wages around the proposition as to what is meant by the language "permanently disabled from attending to his business, or gaining a livelihood, and is destitute of the means of support." It is conceded by appellant that appellee is permanently disabled from attending to his business, or

gaining a livelihood, but it is contended that he is not destitute of means of support, for the reason that he receives a pension of $29.65 a month from the Voluntary Relief Department of the Pennsylvania Company, which, it is conceded, is a mere gratuity, and may be at any time discontinued. The main insistence is, that as his wife owns real estate, consisting of a lot upon which are situate two houses which appellant offered to show were of the value of $4,600, in one of which houses he resides with his wife, and the other house she rents at $16 a month, appellee is not "destitute of the means of support." The question is first raised upon sustaining demurrers to answers, which need not be considered, for the reason that the relevant material facts pleaded were admissible under the general denial, and were, in fact, given in evidence under that answer, with an exception hereafter noted. The question arises upon the evidence, in which there is no contradiction. Appellee had no property. It took an average of $15.76 a month, out of the money he received from the relief department of the Pennsylvania Company, to pay his assessments in the legion. He sometimes had to borrow from a step-daughter. He had no one dependent upon him, and had no obligations, except to support his wife. The money with which his wife bought and paid for and improved the property she had was her own private fortune. Appellee was seventy-one years of age when he made application for payment on his certificate. He was a boilermaker by trade, and began working for the Pennsylvania Company in 1859, and worked continuously until January, 1903, when he became wholly incapacitated for labor, has so continued, and is weak and without strength to do anything. He had been married previously, and had five children, who, with his wife, had all died. He had saved nothing, and had no property when he married the second time, which was twenty-three years before the trial. He had earned an average of from $80 to $100 a month at his trade, but never

had a bank account. Appellant offered to show the value of the wife's property, and the evidence was properly excluded. There was evidence that the wife had between $1,000 and $1,500 when they were married. Appellee furnished the first house she purchased, for which property she paid $1,100, and she afterward purchased for $700 another house, and moved it on the lot, and they moved into the latter, and rented the first house. Appellee had had some sickness, and also expenses attending the sickness and death of some of his children. The question is, whether, under these conditions, appellee is within the class of persons "destitute of the means of support." We think it must be answered in the affirmative. By our statute, "No lands

10. of any married woman shall be liable for the debts of her husband; but such lands, and the profits therefrom, shall be her separate property, as fully as if she were unmarried." §7852 Burns 1908, §5116 R. S. 1881.

"A married woman may take, acquire and hold property, real or personal, by conveyance, gift, devise or descent, or by purchase with her separate means or money; and the same, together with all the rents, issues, income and profits thereof, shall be and remain her own separate property, and under her own control, the same as if she were unmarried." §7853 Burns 1908, §5117 R. S. 1881.

It has been held that "these statutes take away from the husband all right to the possession or control of the wife's separate estate. He has no present right of enjoyment, and no interest in the rents and profits of his wife's real estate. He has a mere right in expectancy, the same as an heir has in his ancestor's property." *Traders Ins. Co., etc.,* v. *Newman* (1889), 120 Ind. 554.

We have no statute requiring a married woman to support her husband, and the common law does not require her to do so. It does require him to support her. It results

9. that appellee has less than $14 a month, and some months less than one-half that amount for his sup-

port, and even that may be discontinued at any time. During his working years he earned substantial wages, and we assume lived at least in comfort, but it is apparent that except for aid from others he would not only be destitute of the means of support, but an object of charity. The fact that his wife might support him, is of no consequence. She is not compelled to do so, but the object of his contract was to provide for himself, independently, when he has not the means of support at his own command, and the phrase "destitute of the means of support" is fairly interpreted to apply to those without sufficient means of their own to support themselves in some comfort, and to support whom no other person is legally bound. The following cases will be found to support this conclusion, not from direct construction, but by analogy: *Reath* v. *State, ex rel.* (1896), 16 Ind. App. 146; *Juneau County* v. *Wood County* (1901), 109 Wis. 330, 85 N. W. 387; *In re Hybart* (1896), 119 N. C. 359, 25 S. E. 963; *City of Lynchburg* v. *Slaughter* (1880), 75 Va. 57, 62; *Trustees, etc.,* v. *Whitney* (1887), 54 Conn. 342, 8 Atl. 141, 154; *White* v. *Fisk* (1852), 22 Conn. 31, 51; *People, ex rel.,* v. *Board, etc.* (1890), 121 N. Y. 345, 24 N. E. 830; *Washburn* v. *Washburn* (1858), 9 Cal. 475; *Mulford* v. *Clewell* (1871), 21 Ohio St. 191; *Gorey* v. *Kelly* (1902), 64 Neb. 605, 90 N. W. 554; *McMahon* v. *Sankey* (1890), 133 Ill. 636, 24 N. E. 1027; *Fox* v. *Wunderlich* (1884), 64 Iowa 187, 20 N. W. 7; *Woods* v. *Perkins* (1891), 43 La. Ann. 347, 9 South. 48; *Inhabitants of Norridgewock* v. *Inhabitants of Solon* (1862), 49 Me. 385; *Hackett* v. *Smelsley* (1875), 77 Ill. 109. For this reason there was no error in refusing to permit appellant to show the value of the wife's property.

It was sought to show by the president of appellant council, what construction was put upon the terms "destitute of the means of support," by the usages and customs of the president and the supreme council. It was admitted that the construction had never been promul-

gated among the members, and that it was not even a written rule or order of the legion. It was wholly immaterial what such alleged usage was, in the absence of its promulgation or notice to appellee, and it is not claimed that he had any knowledge of it, or even that it was known beyond the supreme council, and notice could not be imputed to appellee of an unwritten, unpromulgated, secret understanding of one party of the construction that would be given by it to a phrase upon which the law places its own construction, where the parties have stated their contract in plain and unambiguous language. It was said in the case of *Consumers Ice Co.* v. *Jennings* (1902), 100 Va. 719, 42 S. E. 879, that a custom of a day's growth cannot change the intrinsic character of the contract of parties who are ignorant of it.

For the same reason it was not error to exclude the offer to show that a table of rates adopted by the legion in 1904 was based upon the fact that claims for disability benefits would only be granted to members who were absolutely and entirely destitute of the means of support, from whatever source derived, and that if disability claims were paid to members who were not absolutely and entirely destitute of the means of support, but only relatively so, the association could not continue to do business or pay any claims whatever. It is not pretended that appellee had any notice of either of these matters, and as to the first, it was an unwritten and apparently secret matter; besides, in our view, the secret construction did not change the legal effect of the contract; and as to the second proposition, it is wholly immaterial, in the face of an express contract to pay, whether, under such an agreement, the legion could continue to do business. That was a purely economic or business concern of its own, and over which it had the supreme control. The only effect it could have, would be to increase the number of assessments to such an extent that they would become so burdensome that the members could not keep

them up and would drop out, but that is no excuse for compliance with its legal obligations by the legion, so long as it continues in business.   It could be just as reasonably claimed that no recovery should be had against any insurance company, for the reason that if it paid all claims it had agreed to pay it would have to discontinue business. No question is here raised as to excess in the amount of the recovery.   It cannot induce prospective members to take policies and thereby to provide against the day of inability to earn money, and then defeat their just expectations, by a secret understanding to be given, upon occasion, to the terms used to induce that confidence.   *New York Life Ins. Co.* v. *Eggleston* (1877), 96 U. S. 572, 24 L. Ed. 841.

It is not doubted that usage or custom may be resorted to in determining the effect of ambiguous terms in a contract, but it should certainly not be resorted to where 12. it is not a usage of trade or commerce, or a course of business, and is locked in the breast of one party to the contract, and is not only unknown to, but is secretly kept from, the other.   It cannot properly be said to be a usage or custom, but the secretly reserved purpose of one party to construe its own contract as its own judgment, however honestly applied, may determine in a specific case, though it does not involve any moral turpitude.   Rights of property cannot be adjusted within that rule, for the contract itself excludes such aid in its construction.

Under the by-laws prior to 1905, two regular and stated assessments for the benefit fund were due and payable before the 1st and the 15th of each month, except 13. where those dates fell on Sunday or a legal holiday, when they were payable on the first business day following.  Of these regular assessments no notice was required, but when it was necessary to make extra assessments, notice was required to be given by a bulletin of information, which, among other things, fixed the date of coming due of other

than regular assessments. Failure to pay on or before the dates so fixed suspended the member. In 1905 the by-law was revised so as to require members to pay on every second Monday, an assessment called a regular assessment, and under such by-law no notice of these regular assessments was required, but the secretary was required on or before the first day of each month to mail to each member a bulletin of information "which shall include a list of all deaths and disability benefits of members, which have been received during the previous month, and such information as may be determined by the supply committee on a form approved by them." Failure to pay the regular or special assessment worked a suspension of the member. This committee was from the supreme council. From the time of the adoption of this rule in May, 1905, the supply committee, as it had previously done, approved a form of bulletin that followed the one used prior to May, 1905, in which was a formal notice of the date when the regular and special assessments were payable, and appellee received one of these bulletins from the time he became a member, with the exception herein noted. These bulletins also contained a schedule showing the dates on which the regular assessments were payable in each year, under a heading, "Assessments Due and Payable in 1908." The bulletin last admitted to have been received by appellee contained such statement, giving the date on which each second Monday in 1908 fell, in which is the date April 13, 1908, noted as assessment No. 589, and in the same bulletin is a formal notice of the preceding regular assessments No. 586, No. 587 and No. 588, and no notice of a special or extra assessment. This bulletin gave notice that these assessments in the foregoing numerical order must be paid on or before March 2, March 16, and March 30, 1908, respectively, or the member failing to pay would forfeit his membership in the legion. These dates fell on Mondays, but call for their

payment in the month of March, 1908. It does not appear that one of them was an extra assessment, but there had been a fixed custom established by the supply committee, and acted on for many years, of giving notice of the dates when the regular assessments must be paid to prevent forfeiture. A clause in the constitution provides for reinstatement of the member within thirty days, upon designated terms.

This suit was begun June 1, 1907. Appellee continued to pay dues and assessments up to an assessment of $7.44, that fell due April 13, 1908, which he did not pay on or before that date, but of which he testified no notice had been given to him. The trial of the cause began April 14, 1908, and on the morning of that day appellee, before he had remitted his council's dues, tendered the amount of the assessment to the collector, which was refused. He then brought it into court, and tendered it on the trial, and paid it into court for appellant's benefit. A forfeiture is claimed from these facts. April 13, 1908, was the second Monday in the month. There is no evidence as to whether this was a regular or special assessment, other than the fact that it was payable on the second Monday of the month. The provision of a by-law of a mutual benefit society, that the failure to pay an assessment when due shall suspend the member and his rights under his benefit certificate, is a valid agreement, and is self-operative. *Tibbitts* v. *Mutual, etc., Ins. Co.* (1903), 159 Ind. 671; *Grand Lodge, etc.,* v. *Marshall* (1903), 31 Ind. App. 534, 99 Am. St. 273 and notes; 3 Cooley, Briefs on Ins. 2338.

There are many cases, however, in which it has been held that such provision is not self-operative, that the relation is still a qualified one, and that affirmative action by the insurer is necessary. 3 Cooley, Briefs on Ins. 2339.

But as forfeitures are not favored, appellant's custom of giving notice of the time regular assessments are due was

a waiver of the right of forfeiture for nonpayment, without the giving of such notice. Where notice of an assessment is required by the by-laws of the society to be given, there can be no forfeiture on that ground, unless the notice is given. *Carter* v. *Brooklyn Life Ins. Co.* (1888), 110 N. Y. 15, 17 N. E. 396; *Denver Life Ins. Co.* v. *Crane* (1903), 19 Colo. App. 191, 73 Pac. 875; *Heinlein* v. *Imperial Life Ins. Co.* (1894), 101 Mich. 250, 59 N. W. 615, 25 L. R. A. 627, 45 Am. St. 409; *Mutual, etc., Life Assn.* v. *Cleveland Woollen Mills* (1897), 82 Fed. 508, 27 C. C. A. 212.

Nor should a forfeiture be permitted, where, during a long term of years—here the full term of membership—it has been the uniform custom of the society to give notice. Its own acts should estop it. *Elgutter* v. *Mutual, etc., Life Assn.* (1900), 52 La. Ann. 1733, 28 South. 289; *Union Cent. Life Ins. Co.* v. *Pottker* (1878), 33 Ohio St. 459, 31 Am. Rep. 555; *Goedecke* v. *Metropolitan Life Ins. Co.* (1888), 30 Mo. App. 601; *Mayer* v. *Mutual Life Ins. Co.* (1874), 38 Iowa 304, 18 Am. Rep. 34; *New York Life Ins. Co.* v. *Eggleston, supra; Briggs* v. *National Life Ins. Co.* (1882), 11 Fed. 458; *Equitable, etc., Ins. Co.* v. *VanEtten* (1891), 40 Ill. App. 232; *Attorney-General* v. *Continental Life Ins. Co.* (1884), 33 Hun 138; *Hartford Life Ins. Co.* v. *Hyde* (1898), 101 Tenn. 396, 48 S. W. 968; *Mills* v. *Home, etc., Life Assn.* (1894), 105 Cal. 232, 38 Pac. 723.

There are a few cases involving annual premiums, where it had been customary to give notice, and the failure to do so has been held not to waive the forfeiture. In case of monthly assessments it is of course only a difference in degree, but where a uniform custom has been so long and unbrokenly followed, as here, covering the entire period of membership of over twenty years, and where, without notice, there is a prompt offer to pay, it is a more just rule to deny forfeiture upon the ground of waiver.

Objections are urged to instructions given and refused. They all present questions that are fully covered by the foregoing views as to the complaint and the evidence.

There is no error in the record, and the judgment is affirmed.